The Chancellor.
1. The first question upon this case is, whether the plaintiffs were not, upon the death of Peter Schuyler, entitled, as his heirs at law, to lot No. 6, in Marcellus.
The will of the testator was made on the 24th of Novemher, 1786, and it was not afterwards altered or republished with the solemnities required by law. The will, therefore, did not, and could not, affect lands subsequently acquired.
It appears from the pleadings and proofs, that the testator, after making his will, purchased, or contracted to purchase, the lot in question, and that he received from John Earnest Pier, the original patentee of the lot, either a conveyance in fee, or a covenant on the part of Pier to convey the lot, for a valuable consideration. According to the testimony of Pier, a formal deed in fee was executed and delivered by him to Schuyler, and the consideration of SOL paid. The defendants admit, that an instrument in writing of some kind was executed and delivered, but they cannot *316 recollect the nature or terms of it. The defendant, MrsNewkirk, who was the widow of the testator, and his sole executrix, admits, that she found such an instrument among the papers of the testator, after his death, and that she took it to counsel to obtain an opinion thereon. She farther admits, that the instrument is lost or destroyed, though she cannot tell when or how, and that she took a deed in fee to herself from the patentee, and paid him the original price. The patentee says, that life re-executed such a deed to her, because he was told the first writing was not sufficient; but he denies that he ever received any farther consideration, or any payment from her. In an examination of Mrs. Newkirk, taken de bene esse, under the act of the 19th of March, 1812, to .perpetuate testimony, she admits, that when Pier executed the deed to her, she offered him the original writing, but that he left it with her.
An equitable interest in land, ticie/of agreement for the pruchase, will quenty Yevise; ro* devise' 'it the' <heir™<aiid the ^executor^ purchasey moiieiit of"thefheir.
Where an in strument under seal, being eithiand&to* the te” nant’t” convey his* amiH? and devisee, among ms papers, and which she does not produce, nor ac-loss, the court most favourable to'fits'contend for the benefit of the heir.
whether the writing m question was a conveyance ot the lot, or only an agreement to convey, does not appear to me to be material. An equitable interest founded up- articles for a purchase, and which a court of equity specifically enforce, is real estate which will pass by a devise made subsequently; and if there be no such devise, will descend to the heir, and the executor must pay the purchase money for the benefit of the heir. (Greenhill v. Greenhill, Prec. in Ch. 320. Langford v. Pitt, 2 P. Wms. 629.) But in this case I have a right to conclude that an , . , , , absolute conveyance m tee was executed by Pier to the testat or. Here was a writing which came to the possession of the defendants, and upon which the executrix took advice, and which writing stood in the way of her interest under the will, and which she does not now produce. She r does not account for its loss. I will, therefore, give the most 7 ° favourable intendment as to its contents, for the benefit of the heir. This is the settled doctrine in the books; and it is founded on the maxim of law, that .omnia presumuntur in odium spoliatoris, (Hudson v. Arundel, Hob. 109. 2 P. *317 Wms. 748. S. C. Dalston v. Coatsworth, 1 P. Wms. 731. Lord Hardwicke, in 1 Vesey, 235.) The existence of the instrument, and which Sir Joseph Jekyll said, in (2 P. Wms. 748. 750.) was fundamental to a decree on the point, is admitted. We have also the direct and positive testimony of the grantor, that the instrument was not merely an agreement to convey, but an actual conveyance of the lot. My conclusion, accordingly, is, that lot No. 6, in Marcellus, descended, on the death of Peter Schuyler, to the plaintiffs, as his heirs at law, and that they became seized in fee.
2. The next point in the ease is, upon what principles, and to what extent, the defendants are to account to the plaintiffs for the value of the lot.
By the will of the testator, he directed that his debts should be paid out of his personal estate, and if that should prove deficient, that the deficiency should be supplied out of his real estate; and the executrix was authorized to sell so much of it as should be requisite for that purpose. He then gave all the residup of his estate, real and personal, to his wife, in fee, and made her sole executrix.
The defendants state, in their answer, that the debts against the estate, and paid by them, amounted to 8,951 dollars and 4 cents, of which they have annexed a list; and that they have expended large sums of their own money for that purpose. They state further, that the whole real and personal estate of the testator was not equal to the debts which they have paid; and they havefurnished proof that the personal estate of the testatator did not exceed 823 dollars, and that the real estate, exclusive of the lot in question, did not exceed 4,000 dollars, in value. They state further, in their answer, that upon establishing the title of the executrix under the patentee, by a trial at law, they sold the lot in parcels for 2,900 dollars; and they have given proof of such sales, and of the amount of the consideration given for one of the parcels.
if. an exccutrator admpays moncys^deMs to the value of the personal he*6may1 apply the assets towards'nsatisfacn”ys “‘so*8 byDd uch dec! sets’ ‘become perty°wn If an cxecutor be directed to sell land, it cannot retain n sonafassPts" ?onaif ‘^assets insuficien pr°VC cutor ‘has paid out of his own moneys dents to the value of the land, may e if the ed to18be°soid, ce‘eds for Pbis* indemnity.
If a reference is to be had to ascertain these facts, with more precision, it is previously necessary to determine to what extent the executrix is to be held responsible.
The rule is well established, that if an executor or administrator pays, out of bis own moneys, debts to the value of the assets in hand, he may apply the assets to his own use, towards satisfaction of the moneys he has expended. (Plowd. 186. a. Dyer. 2. a. 187. b. S. Touch. 454. 464.1 Saund. 307. Off. of Ex'rs, p. 89, 90.) The assets,' by such election, become absolutely his own property. This rule has always been applied to the personal assets; and it is said (Dyer. a.) that if the executor be directed to sell the lands, he cannot retain it in hand, as he may personal assets, because *he direction of the will is that it be sold. This case to Put the distinction altogether upon the testator’s intention : and if the personal assets prove deficient, and 1 . the executor pays out of his own moneys, to the value of the land, there does not appear to be any solid ground for the distinction. If this court was to direct the lands to be sold in such a case, it would certainly allow the executor to retain for his indemnity. The object of the will, an^ the ends of justice, are equally attained, if the value 0f the real as well as of personal assets, be faithfully ápL e v * plied in discharge of the debts. But in this case, the lot „ , .. . , _ _ in Marcellus was sola, as soon as it was cleared of adverse claims ; and the plaintiffs have no further interest in the question than to see to the due application of. the proceeds of that sale.
If the executrix was bound to apply, in the first place, the lands devised to the discharge of the debts, or if the lands devised, and the lands desended were to boar, equally and rateably, the charge of the debts, then the inquiry before a Master will be necessary, to ascertain, with certainty, the amount of the debts, the payments which have been made, and the value of the lands devised. If the allegations in the answer should turn out to be *319 supported by proof, as to points where further proof is necessary, then there will be nothing coming to the plaintiffs, and the object of their bill will fail. It cannot, for a moment, be maintained, that the plaintiffs are entitled to hold the land descended, or the proceeds of that land, free of the charge of paying the debts.
The order of TeZ^tmaxi's ilebts™! The l“LanasStadescended; 3. Lanas devised.
I am of opinion, that the land descended to the plaintiffs is to be applied to the discharge of the debts, on failure of the personal estate, before the lands devised to tlie widow; and that the latter are to be applied, only so far as may be requisite to make up the deficiency. The order of marshalling assets towards payment of debts, is to apply, 1. The personal estate : 2. Lands descended: 3. Lands devised. This is the general course, and every departure from it may be considered as an exception to a general rule. °
This order of marshalling assets was declared by Lord Talbot, in Pitt v. Raymond, (cited in 2 Atk. 434.) and again in Chaplin v. Chaplin, (3 P. Wms. 364.) In the latter case, he held, that where the testator was indebted by bond, and devised part of his real estate to his three daughters, and suffered another part to descend, undevised to his son and heir at law, that the lands descended must be liable for the bond debt, before the land devised, for by applying the land devised to pay the debt, the will would be disappointed. It is too well settled to be questioned, that the personal estate is to be first applied to the payment of debts and legacies, and that a mere charge on the land will not exonerate the personal estate, nor any thing short of express words, or a plain intent in the will of the testator. (Ancaster v. Mayer, 1 Bro. 454. Watson v. Brickwood, 9 Vesey, 447.)
The doctrine I have stated is not only thus well supported by authority, but it has been applied to cases precisely like the present.
In Galton v. Hancock (2 Atk. 424. 427. 430. Ridge *320 way’s Rep. 301. S. C.) the testator, seized in fee of an estate, borrowed money upon mortgage, and then made his wj]]; an¿ “after all his just debts were satisfied,” he deviSed the estate mortgaged, and also an estate for lives, to his wife, and made her sole executrix. He, after making his will, purchased the reversion in fee of the life estate, and died. The bill was filed by the heir at law, against the widow, insisting that the estate descended was not liable to pay the mortgage debt. But Lord Hard-wicks decreed otherwise. He decided, after much consideration, and on a rehearing, that the widow was entitled to have the mortgage upon the estate devised to her, exonerated out of the real estate descended to the heir. Every devisee was said to be in the, nature of a purchaser, and the heir was not entitled to contribution against a purchaser. He thought “ the case not hard upon the heir, because the testator clearly intended to give away the whole estate from the heir, and because it was an accident merely, which threw a part of it upon him, viz. the ignorance of the testator that it was necessary, after purchasing in fee of the estate, pour auter vie, to publish the will, to make it to pass to the widow.
This case is, in many respects, strikingly analogous to the one now under discussion. The difference is, that in Galton v. Hancock, the real estate was not expressly made chargeable with the debts on failure of the personal: nor was the executrix authorized to sell it. But the devise there was after dll his just debts were satisfied, and part of the estate devised was charged with a mortgage debt; yet the burden of discharging that very debt was thrown upon the land descended, in exoneration of the land devised.
The case of Wride v. Clark, decided by Sir Thomas Sewell in 1765, (Dickens, 382. 2 Bro. 261. note,) approaches still nearer, in all its circumstances, to the one before me. The testator, in that case, charged all his real and personal estate with the payment of his debts, and *321 subject thereto, he devised his real estate to his wife, in fee, and appointed her sole executrix. He afterwards purchased other lands which descended undevised to the heir at law. The debts exceeded the personal estate, and the Master of the Rolls decided that the descended estate should be applied previous to the devised estate. So, in Davies v. Topp, (2 Bro. 259. note,) the same rule received the sanction not only of the same Master of the Rolls, but of Lord Thurlow. In that case, the testator, seized of real estates in fee, subject to a mortgage, by his will made all his real and personal estate chargeable ivith the payment of his debts and legacies, and, subject thereto, devised his real estates to L., and made him executor. After making the will, the testator purchased other real estate, and died, leaving two sisters, to whom the real estate purchased after the will, descended. The Master bf the Rolls directed that the personal estate not specifically bequeathed, be first applied in payment of the debts and legacies, and that the deficiency due to the mortgagee and other specialty creditors, should be raised out of the real estate descended; and if that was insufficient, then the deficiency to be made good out of the real estates devised and charged with the payment of debts. This decree, on appeal, was affirmed by the Lord Chancellor.
It would be in vain to search for cases more completely applicable; and it is impossible to distinguish the present case, in any material degree, from those which have been cited, and which must be regarded as the established law of the Court.
In Donne v. Lewis, (2 Bro. 257.) which was subsequent to the above cases, an exception was made by Lord Thurlow to the operation of the general rule, under special circumstances, forming that exception, and which circumstances have no existence in the present case.
The testator devised lands in trust, to sell and pay debts, and in ease the trust estate should not he sufficient, *322 that the deficiency should be charged on the five several estates specifically, and very particularly, devised to his five children, each estate to bear one fifth part of such deficiency. The testator purchased another estate after making his will, and died.
'Lord ThurZoio’s opinion as to the order, or assets,alforf the d3)ts.ent °f
The question was, whether the testator was to be considered as giving an absolute direction out. -of what fund the payment should come, or merely as arranging the property he had at the time of making the will, without any view of exempting or favouring any property he acquired afterwards. Lord Thurlow went at large into the consi- ,. „ , . deration of the subject, and reviewed the preceding cases, He said his idea of the order of affecting assets, was, 1. The general personal estate. 2. Ordinarily speaking, estates devised for thepayment of debts. 3. Estates descended. 4. Estates specifically devised, eyen though they are generally charged with the payment of debts.
The Chancellor brought the case then before him under the second head; and it is evident that he meant to be understood, by estates under that head, estates specially devised, for the express and particular purpose of paying debts, and not merely estates generally charged with the payment of debts; for those estates fell under his fourth division. He declared, in" the case, that the rule was settled, that a bare charge of the debts upon the land would not do; and he said the only question that could reconcile all the cases was, were the terms of the will only a general indication, that the testator meant to subject his property to his debts, or did he mean more, and to make a particular provision for the purpose 1 In the case before him, the will went further than in Davies v. Topp. The testator meant to charge an estate specifically, and that intention could not be executed, without exempting the estate descended; and, therefore, his Lordship, after admitting the authority of Wride v. Clark, and Davies v. Topp, decreed, that the debts must be paid out of the trust estate, and then out of the devised estates ex *323 pressly and particularly pointed out in aid of the trust fund.
Lord Alcanley’s opinion on the same question.
The question in this case was truly between the descended estate and the the trust fund, specially bequeathed for payments of debts; for the testator had declared, that the deficiency of that fund should be supplied by the contribution of the five children; and, therefore, as to the point of the case, they were to be taken as one fund.
This decision was no more than what Lord Hardwicks had declared in Powis v. Corbet, (3 Atk. 556.) that where a testator created a particular trust out of particular lands, and subject to that trust, devised them over, the devisee could take no benefit but of the remainder; and in such a case the heir at law stood in a better situation than the devisee.
Since the time of Lord Thurlow, the question was brought before Lord Mvanley, as Master of the Rolls, in Manning v. Spooner, (3 Vesey, jun. 114.) and all the authorities on the point of marshalling assets, as between the heir and devisee, were reviewed and discussed.
In that case, the testator devised his real estate to trustees, to be applied “in payment of such of his debts and legacies as the residue of his personal estate should prove deficient in paying.” After making the will, he purchased other lands, and died. The question raised was, whether the descended estate became liable for the debts before the application of the fund to arise from the devised estate under the trust in the will? The Master of the Rolls, in delivering his opinion, observed, that the question depended entirely upon the point, whether there was a, specific gift of any part of the estate for the purpose of paying the debts, or whether it was only a general charge for the purpose. That the case of Donne v. Lewis, was determined upon principles that had been constantly acted upon since, and which must govern all such cases. That the order of application to debts was, 1. The general per *324 sonal estate, unless exempted expressly, or by plain impiication: 2. Any'estate particularly devised for the purpose, and only for the purpose, of paying debts. 3. Es~ tates descended. 4. Estates specifically devised. That the question, in every case, where the contest is between an estate descended and an estate alleged to be provided for the debts, is, whether it be a general charge, or any part of the estate ,be selected, for the express purpose of paying the debts. That if part be selected for that purpose, that part is to be applied before the descended estate, whether the testator had the descended estate before he made his will or not. That Lord Thurlow, in considering the prior cases, was clearly of opinion, that the question was, whether the testator had selected any part of his estate, which it was his will should be first applied, or whether the charge was only to subject his estates to the payment of his debts. Taking this rule for his guide, Lord Mvanley held, in that case, that the real estate devised was specially appropriated as a fund to pay the debts, and for no other purpose, and that the heir was not to be called upon in that case, until the appropriated fund had become exhausted.
Lord Eldon on tbe same point.
This construction of the rule is in perfect conformity with the doctrine in all the preceding cases; and the rule is stated with, such accurate deduction, and with such clear precision, as to remove all doubt on the subject. There is no contradiction among the cases. Lord Thurlow seemed to admit that they were all consistent with each other, and rested on one simple principle.
The law on this point was, afterwards, brought into repeated discussion before Lord Eldon, and though he appeare¿ (0 subject the cases to criticism, and to suggest doubts and difficulties, and though some of his remarks are wanting in the requisite precision, he undoubtedly left the rule where it Was settled by the former decisions.
In Harwood v. Oglander, (6 Vesey, 199. 8 Vesey, 106, S. *325 C.) the testator charged all his estates with the payment of his debts; and subject thereto, he devised all his real eslates to his wife for life, with remainders over in fee; and he directed, that as soon after his death as conveniently might be, part of his real estate, with the exception of another part called Canefield, should be sold for the payment of his debts, and that the devisees thereof should join in the sale. The principal question in the case was, whether the will was not subsequently revoked, as to a part of the real estate called the fee-farm rents, and if so, then another question was, whether these fee-farm rents, descending to the heir at law, would not be primarily applicable to the debts, as descended estates, before estates devised; the Chancellor was of opinion, that the will was partly revoked, and that the fee-farm rents descended to the heir, and were not to be first applied to the discharge of the debts. He understood Lord ThmhuPs doctrine, in Donne v. Lewis, to be, that if there was any thing in the will that went beyond a mere charge, and pointed out a particular mode or means, it would save the descended estate. That Lord Mvanley, in Manning v. Spooner, did not express the opinion of Lord Thurlow, and that, as he understood Lord Tkurlow, and the law ever since, the first fund applicable was the personal estate not specifically bequeathed; 3. Land devised for the payment of debts, not merely charged, but devised or ordered to be sold; 3. Descended estates ; 4. Lands charged with the payment of debts. That the distinction was between charging all the real estate with the debts, and proceeding so much farther as to propose the mode in which the debts were to be paid. In that case, he observed, the will charged the debts, first in general words, then in special words, and directed a sale, and expressly stated the parties who were to join in the sale. It was a devise, therefore, to persons, coupled with a devise to them for sale for payment of debts. He admitted the distinction was thin, and seemed to doubt of its sound *326 ness; bur being settled, he thought it better to abide by it.
Some of Lord Eldon's expressions in this case appear to be too much at large; and they would seem, on the first impression, to control the opinion of Lord Mvanley, and to limit the doctrine in the former cases ; but when we come to attend closely to the facts upon which his Lordship decided, it will be found, that there is no variation in the rule. The will, here contained a special direction to apply a designated portion of the devised lands to the payment of the debts. The appropriation was of a specific part, to the exclusion of another part» It was in exclusion also of the personal estate; for the direction was to sell the part assigned for the debts, “ as soon as conveniently might be after the testator’s decease,” and the parties in interest, as devisees, were directed to join in the sale. No doubt could well exist of the testator’s intention, under such a special provision, and marked with this strong circumstance, that other real property which he had at the time was exempted from the application. Here was a creation and designation of a particular fund for the debts, and the devisees of that fund were made trustees for that purpose. Here was a devise of lands for the purpose of sale to pay debts, and the case, therefore, fell within the range of the exception to the general order of marshalling assets, and which exception was admitted, as we have seen in Powis v. Corbet, Donne v. Lewis, and Manning v. Spooner.
In Milnes v. Slater, (8 Vesey, 295.) Lord Eldon gave a still more mature opinion on the subject.
The testator, in that case, directed that his debts and legacies should be paid out of his personal estate; but if the same should prove deficient, he then directed that the deficiency should be supplied according to a particular provision for the purpose, in which, after giving some legacies and a devise of a life estate in part of his lands to his *327 Wife, he devised all the residue of his real and personal estate to trustees, to raise, by mortgage thereon, a sufficient sum to pay the residue of the debts and legacies, and then to settle the same estate to certain declared uses. The testator purchased other real estate after making his will, and died.
One question was, whether the estates descended were applicable in ease of the estates devised.
Lord Eldon said, that the true question, according to Lord Thurlow, was, whether the testator meant only to behave honestly, which is all a general charge imports, or whether, beyond that honest conduct in creating a general charge for the security of his creditors, he meant also to create a particular fund for payment of his debts. In Pmeis v. Corbet, a particular term was raised for the discharge of the debts, which was held sufficient to warrant the application of the lands comprised in it, before the descended estates. His Lordship admitted, that the circumstance of the devisor having other estates which he does not touch, goes a great way to show, that by ordering the debts to be paid out of the devised estates, he does not intend the application of those which descended; but he said the case was very different where he had no land at the time of the devise, except the land devised, and afterwards, by descent or purchase, acquired other lands. He considered that, upon the authority of all the preceding cases, the rule must now be considered settled, that whatever may be the ordinary application, if there be a real fund created for the discharge of debts, that will be applied first, when the question arises between the heir and devisee, either as to estates which the devisor had at the time, or which he acquired afterwards. He meant by a real fund created, the same as one selected, according to Lord Mvanletfs expression; and that it was “ the creation of a particular fund” that entitled the heir to say the descended estate was exempt.
He declared repeatedly that it was the creation or raising of a particular fund or interest for the debts, that required *328 that fund to be applied, in exoneration of the descended estate, and that such a particular fund was created by the will in that case.
If we test the. present case by all these examples, it will evidently appear, that there is no creation of any particular fund set apart for the debts, so as to form an exception to the general rule of this court in marshalling assets. The will here went no further than to make a general charge of the debts upon the whole estate, real and personal, and to show that the testator meant to be honest, by charging the real estate with the debts, in default of the personal, and to clothe the executrix with the ordinary powers for that purpose. The direction was general, that if the personal estate should not be sufficient, the deficiency was to be supplied “ out of the real estate and the executrix was authorized “ to sell the same, or so much thereof - as should be necessary to make up the deficiency.” The direction was to her as executrix, and not a charge upon her as devisee. In her latter character, he gave her the residue of the estate, after the debts were paid, which was the same thing, in' substance, as the devise in Galton v. Hancock, where the devise of the land was after all the just debts were satisfied, or the devise in Wride v. Clark, and in Davies v. Topp, which charged all the estate with the payment of the debts, and then, subject thereto, devised it. The general authority to sell in this case does not fall within the meaning of any expressions rather indefinitely used by Lord Eldon ; for they were to be applied to the cases before him, where a special fund was marked out for the debts, and a duty thrown on the devisee, qua devisee, or trustee, to apply that particular fund. To allow this case to break in upon the general rule, which was established as early as the time of Lord Talbot, would be to unsettle and destroy that rule altogether. It would be to allow the heir (certainly, in this case, contrary to the testator’s meaning, for the ineffectual attempts to repub *329 lisli the will, show clearly that he never meant to die intestate, or to withold any part of his estate from his wife,) to impair or defeat the object of the testator’s bounty.
It results, then, from the rule which I have thus" deduced from the cases, that the debts of Peter Schuyler are to be charged, 1. Upon his personal estate; 2. Upon the lot No. 6. in Marcellus, which descended to the plaintiffs, and was afterwards sold by the executrix; 3. Upon the estate devised to her.
If any credit is to be given to the answer, and to the testimony of two of the witnesses, (Gray and Beardsley,) the debts not only exhausted the personal estate, but, also, the proceeds of the lot; and a reference to a master for further inquiries on the subject would be useless to the plaintiffs. If it should appear, by the Master’s report, that the debts paid are equal to," or exceed, the value of the personal estate, and the amount of the proceeds of the lot, the bill will be dismissed. The plaintiffs may have a reference, however, if they wish, to pursue the inquiry, under the principles which I have laid down; but it will be at the peril of costs.
I shall, accordingly, declare, that the lot in Marcellus mentioned in the pleadings, descended, as undevised real estate, to the plaintiffs, as heirs at law; and that the defendants must account for the price for which they sold the lot, in 1808. That upon such accounting, they are to be charged with the value of the personal estate of the testator, which came to the possession of them, or either of them, and to be credited with debts of the testator, which they had paid; and if the debts paid are found to be equal to, or exceed the value of the personal estate, and the proceeds of the said lot, the defendants are to be no further charged but the Master is to report accordingly, to the end that the bill may be dismissed. But if the debts paid do not exhaust the personal estate, or if *330 having exhausted it, they do not exhaust the proceeds of the sales of the said lot, then the Master is to report the amount of such sales, or of the balance of such sales, as the case may be, remaining unexhausted, together with interest thereon, from the time of such sales, up to the date of the report. And unless the plaintiffs shall, within 40 days from the date of this decree, signify their election, by notice to the solicitor of the defendants, to proceed with the reference, the bill shall then stand dismissed without costs.
Decree accordingly.(a)

 Vide Livingston v. Livingston, ante, p. 148. and Duke of Cumberland and others v. Codrington and others, ante, p. 229.