Judge Hitchcock
delivered the opinion of the court
In the argument of this case, counsel for the complainant have labored to convince the court that the delay in paying the amount due upon this contract ought not to excuse the defendants from performance. And the strong reason urged is, that, owing to the death of the original parties, the stipulation of that contract could not have been complied with. There was a defense, however, on the part of those under whom the complainants claim, while all the parties to the contract were in full life. The first payment was not made when it fell due, and it is not a sufficient excuse to say that one of the vendors was then sick. The other being well, might have attended to the business. It would seem, however, that the vendor was not disposed to take any advantage of this default; for from anything that appears in the case, he was willing to the day of his death to have received *369 this payment. After his death, although there would have been more difficulty in carrying the contract into execution, still it might have been done. Power is vested in the courts of common pleas to authorize administrators specifically to execute the contracts of their intestates relative to the realty. And in this case no reason is perceived why the execution of a deed might not have been compelled, upon making the first payment, and tendering a mortgage to secure the deferred payments. By payment of the whole purchase money, the execution of a deed by the representatives of Williams might have been compelled without any mortgage. In truth, the case shows that his representatives were urgent upon the subject, and would undoubtedly have been willing to have sought the aid of the court, in ^carrying into effect the contract, but for the refusal of the administrators of the Howards to make payment. That there has been gross and culpable negligence on the part of the Howards, and those representing and claiming under them, there can be no doubt. Whether this of itself would be sufficient to exonerate the defendants from performing, it may not be necessary for the purposes of this case to determine. There is one feature in the case which seems to us to be decisive of its merits.
On March 30, 1829, this contract was rescinded, so far as it could be, by the act of the administrators of the respective parties. This arrangement was manifestly most beneficial to the Howard heirs. At the time it was made, the,land was but about one-half as valuable as when purchased, and this value was constantly depreciating, and did depreciate for two or three years thereafter. Had the administrators of Williams insisted upon the purchase money, as they had a right to do, not only the other property of the Howards must have been exhausted, but the land itself must have been sold; and even then, if any reliance can be placed upon the testimony, the avails, in connection with the other assets in the hands of the administrators, would not have been sufficient to pay the original purchase money and interest. In the language of the defendants’ counsel, the estates of the Howards would have been “ annihilated,” and not one cent left for the heirs. Whereas, by making this arrangement, those estates were relieved from a heavy burden, and a property amounting to more than three thousand dollars secured to the heirs. This arrangement was altogether lavorable to the heirs of the Howards, and it was equally unfavorable *370 to the heirs of Williams. At least it was so considered at the time, and for this reason his administrators were unwilling to enter into it, and did not do so, until after consulting his widow and all interested. Considering all these things, these complainants do not, so far as abstract justice is concerned, appear before this court under very favorable circumstances. Nor would they have appeared here but for the circumstances that these lands have greatly increased in value, and are now actually worth some five'or six times as much as they wore when purchased of Williams. This circumstance, however, is not one which will induce the court to look upon their case any more favorably; on the contrary, it might furnish a reason why we ^should not interfere. It seems to us clearly, that it would be altogether unconscionable to permit these heirs, who, so far as property is concerned, were saved from ruin by the indulgence of Williams’ administrators, now to enrich themselves at the expense of Williams’ heirs, and certainly the complainant, who claims as assignee, can be entitled to no other relief than are those under whom he claims.
But it is urged by complainants’ counsel, that these administrators have no right to rescind this contract. That here was an equity in real estate, which descended to the heirs, with which the administrators had no concern, and of which they could not deprive the heirs. Is this true ? To a certain extent it may be, but not, I apprehend, to the extent insisted upon. By our law, real as well as personal property is assets in the hands of administrators for the payment of debts. The only difference is, -that the personal property must first be exhausted. And further, that the real property can not be disposed of without an order of the court of common pleas, acting as a court of probate. Here was an equity which descended; but it was such an equity that it could not be made perfect, or draw after it the legal estate, without exhausting itself, the legal estate, and much more. It was valueless, and worse than valueless. Under such circumstances, an administrator having made such an arrangement as was made in the present instance, this court acting as a court of equity, would not be disposed to interfere. If these parties have any remedy at law, they can pursue it. If their legal remedy is lost, chancery ought not to grant them relief.
I am not prepared, however, to adopt the principle in its fullest extent, that an administrator can have no right to interfere with *371 an equitable interest in lands. In the case of Livingston v. New;kii-k, 3 Johns. Ch. 316, the chancellor says, “an equitable interest founded upon articles for a purchase, and which a court of equity will specially enforce, is real estate which will pass by a devise subsequently made, and if there be no devise, will descend to the heir, and the executor must pay the purchase money for the benefit of the heir.” In the case of Champion v. Brown, 6 Johns. Ch. 402, he expresses doubts whether an administrator can assign such a contract, so as to vest any interest in the assignee without the assent of the heirs, and inclines to the opinion that he can not. These principles seem to be founded in reason, and are *substantially recognized in our statute defining the duties of executors and administrators, which treats equitable interests in land as real estate, and requires that they should be sold with the same formality. 29 Ohio Stat. 239.
Where lands are sold by articles of agreement, and not conveyed, the purchaser is held to be a trustee to the vendor for the purchase money, and the vendor is considered as holding the land in trust for the purchaser. But where the purchase money has been paid-, and the vendor refuses to make a deed, the purchaser has his election to resort to equity for a specific performance, or to a court of law to recover back the purchase money. And in case of the death of the purchaser, I see no objection to permitting his administrator under similar circumstances, if it be most for the interest of the estate, to sue for and recover the purchase money. And if he may do this, he may make any other arrangement with the vendor, which shall be beneficial to the estate of his intestate.
Again, this case shows that the administrators of Williams were pressing the administrators of the Howards for payment of that part of the purchase money which was due; but payment was refused; and the case further shows that these latter administrators were unable to pay. It is laid down in Sugden on Tendors, 9 ed. 439, that “ where circumstances are such that the purchase money can not be paid for a length of time, as if the purchaser die or become bankrupt before the contract be carried into effect, and his executors are not able to get in the assets or effects, the vendor is entitled to have the contract rescinded.” But counsel say Ibis should be by proceeding in chancery. Why go into chancery, when the representatives of the vendor are willing to *372 rescind without? It can not be necessary. And it would be strange, indeed, that a court of chancery should decree the specific performance of a contract against those who had a right to rescind that contract, and who had, in fact, done all they could to rescind it.
Whether we consider this case upon the principle that this contract was rescinded by the administrators of the respective parties by an arrangement, under the circumstances, highly beneficial to the heirs of the Howards, or upon the principle last adverted to, it seems to the court that the defendants are entitled to a decree; the bill is, therefore, dismissed at the costs of the com'plainants.