UTICA,
Aug. 1824.

Kelsey
v.
Deyo.

Judgment of reversal.

## KELSEY against DEYO & WIFE.

ERROR from the Court of Common Pleas of the county of Ulster. The action in the Court below was assumpsit by Deyo and wife against Kelsey, for a legacy bequeathed to them by the will of Nathaniel Kelsey, deceased, and alleged in the declaration to have been charged on his real estate devised to the defendant below. The declaration averred that the defendant entered into possession of the premises devised to him by the will, thereby became liable to pay, and, in consideration thereof, promiesd to pay the plaintiffs, the legacy so charged. Plea, non-assumpsit.

On the trial, the will of Nathaniel Kelsey, dated April 9th, 1803, duly executed to pass real estate, was given in evidence by the plaintiff, containing, among others, the following devises and bequests : 1st, That all his debts be paid out of his personal estate ; 2d, He gave to his wife, Lucretia Kelsey, all his personal estate, after paying his debts, except what he thereinafter granted to his daughter Sarah Kelsey. He

*An action at law lies for a legacy directed by will to be paid by a devisee of lands, and expressly charged on the lands; if the devisee has entered upon the lands, & promised to pay it. Part payment is conclusive evidence of such a promise. So where, from the whole will, it appears to have been the intention of the testator that the legacy should be a charge on the land devised :*

although the land was not expressly charged with its payment.
Where a testator bequeathed his personal estate to his wife for life ; and what should remain of this at her decease, over, to be equally divided between all his children ; and then devised his real estate to one of his sons ; and bequeathed certain legacies in money to his other children, to be paid by his son, the one half to be paid in two years after his (the testator's) decease ; and made his son the devisee, with others, executors ; and his son entered into possession, and paid part of one of the legacies ; *held,* that an action lay for the residue of this legacy.

UTICA,
Aug. 1824.

Kelsey
v.
Deyo.

also gave to his wife the use, profit and benefit of his homestead farm; also the right and privilege of cutting timber for fire wood and other uses as she might want; also pasture for cattle and horses, as usual, in and on his farm adjoining the mountain; the above rights and privileges bequeathed to his wife to continue undisturbed during the term of her natural life; and at her decease, what remained of his personal property, to be equally divided between all his children or their heirs. He then bequeathed to his son *Nathaniel Kelsey*,(the defendant below) all his real estate to him and his heirs forever, excepting such rights and privileges as had theretofore or should thereafter be granted by him respecting the premises. The will then proceeded as follows: " And I do hereby order and direct that my son *Nathaniel Kelsey*, (the defendant below) or his heirs. pay the following legacies, that is to say: to my daughter *Abigail Woolsey*, the sum of £100; to my daughter *Lucretia Verhooy* £100; to my daughter *Julia Deyo* (who, and her husband, were plaintiffs below) £100; the one half of each of the above legacies to be paid within two years after my decease; and the other half to be paid in two years after the decease of my wife, without interest." He then gave to his daughter *Sarah Kelsey*, the use of his bed room with a fire place up stairs: and a proportionable right in the kitchen, cellar and chamber in his dwelling house; the privilege of fire wood and apples; hay and pasture for two cows; and the use of the barn and other outhouses; to continue to her so long as she remained unmarried, but no longer: that if there should be any money to be paid at the decease of his (the testator's) father and *Hannah* his wife, to the heirs of his father, as specified in an agreement between him and his father, it be paid by his son *Nathaniel Kelsey* (the defendant below) as soon after his father's decease as his (*N. K's.*) circumstances would admit, to be paid out of the real estate, without interest. The will then appointed *Kelsey* (the defendant below,) *Woolsey*, the testator's son-in-law, executors, and the testator's wife executrix.

It was admitted by the defendant below that he had entered upon the lands and premises described in the will in pursuance of the devise to him; and occupied and possessed

them from the year 1803, until the time of the trial, *April*, 1821 ; and that during that period, and before the commencement of the suit, he had, at different times, made payments to the plaintiff on the legacy to them, reducing the same to $191,28. Upon this, the plaintiffs below rested their cause.

The defendant below moved for a nonsuit : 1. because the will in evidence did not support the plaintiffs' action ; 2. because the legacy bequeathed to *Deyo's* wife was payable out of the personal estate of *Nathaniel Kelsey*, and was not a charge upon the real estate. The Court below overruled the motion ; and charged the jury to find for the plain. tiffs the above sum of $191,28, which they found according. ly. The defendant below excepted upon the above two points, and the questions came here upon a bill of exceptions.

*J. Sudam*, for the plaintiff in error. If the devise had been declared upon in the words of the will, the defendant might have demurred generally. No consideration for the promise is expressed in the will. It is merely directory. There is, therefore, a variance between the declaration and the proof. The declaration states a consideration ; but none is made out in evidence. The testator says, " I do hereby order and direct" that my son *Nathaniel Kelsey* pay the legacy. The devise of the real estate to him was *absolute ;* the order to pay the legacy was directory merely.

Is the real estate charged with the payment of these legacies, in exclusion of the personal property ? Unless it be so, the latter must be called in. Unless the legacy is expressly charged on lands specifically devised ; or the sale of real estate is directed for the payment, the personal property is never exonerated, if we except specific bequests. This is an unerring rule, whenever it appears by the will that the testator understood the difference between an express and implied charge. The legacy in question being general, and there being a debt specifically devised to be paid out of the land, shew that he did understand the difference perfectly. I allude to the debt that may be due upon the agreement between the testator and his father, which is made payable

out of the real estate expressly. The testator gives real estate absolutely; he gives several legacies, without expressly designating any fund from which they are to be paid; and then, at the close of the will, he expressly charges the real estate with the payment of a single legacy. It is enough for us to shew that the personal estate should come in aid of the real; for if so, this cause belongs exclusively to the Court of Chancery; and a Court of common law has no jurisdiction. This question was examined in *Livingston* v. *Newkirk*, (3 *John. Ch. Rep.* 319.) That was certainly a stronger case in favour of charging the real estate, than the present; but the Chancellor refused to charge the real estate; and sums up the doctrine in these words : " It is too well settled to be questioned, that the personal estate is to be first applied to the payment of debts and legacies, and that a mere charge on the land will not exonerate the personal estate, nor any thing short of express words, or a plain intent in the will of the testator." If the legacy was a condition to the enjoyment of the real estate, the legatee should enter as for a condition broken. The remedy is not by action. The general principles of the common law were all in favour of charging the personalty; and the question, when the real estate might be resorted to, was in an unsettled state till the case of *Ancaster* v. *Mayer*, (1 *Br. Ch. Cas.* 454.) The subject was there very fully considered. It was found obscured and involved in a labyrinth of loose and careless dicta. But that case places it upon its proper footing; the intent of the testator; and gives the rules for arriving at his intention. The Chancellor goes back to first principles; and concludes that to warrant a resort to real estate, it must be expressly charged.

It is true that this Court have, in several instances, taken cognizance of actions for legacies of this description; but it will be found that, in all those cases, the charge on land was specific. In *Beecker* v. *Beecker*, (7 *John. Rep.* 99) the real estate was devised, *subject to the legacy*, in terms; and *Kent*, Ch. J. who delivered the opinion of the Court, places the case on the ground of its being an express charge on the land. There is also a distinction between the effect of a charge on the person and on land. In the former case the will carries a fee without words of perpetuity. (*Van Orden*

*y. Van Orden*, 10 *John. Rep.* 30.) To work this consequence, the person must be expressly, not impliedly charged. In *Pelletreau* v. *Rathbone*, (18 *John.* 428) both the real and personal estate were expressly charged; and it was holden that the action would not lie. The party is driven into Chancery even in such a case, where the assets may be marshalled, and the personal assets are liable in the first instance. Debts and legacies are on the same footing in this respect. Had *Kelsey* been directed to pay debts, the personal estate must have been applied in the same manner. (*Toll. L. E.* 240.(*a*) 2 *Bl. Com.* 512.) There is a class of cases in which legacies were given in various ways by words pointing more directly to the real estate than here, and which yet were holden not to charge it. (*Manning* v. *Spooner*, 3 *Ves. Jun.* 114.) In *Milnes* v. *Slater*, (8 *id.* 295) Ld. *Eldon* agrees that, to exonerate the personal estate from the payment of debts, it must be exempted by declaration plain, or inference as plain. And in *Ancaster* v. *Mayer*, (1 *Br. Ch. Cas.* 459, 460,) Ld. *Thurlow* said, " one step has been taken towards a settled rule, by its being laid down that charging the estate in any way is not, of itself, an exemption of the personal estate ; that the personal estate being the fund first liable, where it is to be aided by either a legal or equitable fund, it must be itself in the first place applied." He then states the very case under consideration : " The question that next arises is, whether a real estate being charged and the personal given away, a presumption arises that this shall be exempted from the debts. I never heard, till the arguments in this case, that such a rule had been extracted from the authorities on the subject: on the contrary, I have always understood, that in order to exempt the personal estate, the testator must express an intention so to do." That case was one of a general charge, as here. The personal estate was given over to one distinct from the person charged with the legacies ; but the bequest of the personal property was holden subject to the payment of the legacies. " I therefore," says the Chancellor, " take the rule *in primis* to be, that neither the charge of the debts upon the real estate, or the gift of the personal, is sufficient of itself to exempt it." In

(*a*)*P. 332 of the Phil. ed. 1803.*

Ld. *Inchiquin* v. *French et al.*(*Ambl.* 33, 37) decided in 1744, it was holden that personal estate was not exempt from debts and legacies by devise of a competent part of real estate to be sold to pay them ; that the intention to exempt the per- sonal property must be manifested by a specific bequest of that property. Thus early was this doctrine established by Ld. *Hardwicke.* (*Watson* v. *Brickwood*, 9 *Ves.* 447, S. P.) In *Ancaster* v. *Mayer*, it was held to be immaterial what words were used, unless the legacy was expressly, definitely and exclusively cha·ged upon the real estate. Otherwise the personal must first be exhausted. The case depends upon authority. No matter what may be thought as to expedien- cy. The law has been settled against this action for ages. The case of *Watson* v. *Brickwood*, (9 *Ves.* 447,) considers the question as put at rest by *Ancaster* v. *Mayer*. It is true, there is some confusion in the cases upon the question, if the same rule shall apply, whether the bequest over be general or specific ; but *Webb* v. *Jones*, (2 *Br. Ch. Rep.* 60) decides that the testator cannot exonerate the personal estate with- out expressly providing another fund. Suppose there had been no words of inheritance in relation to this devise; though the legacy had been expressly charged on the land, it would not have carried a fee ; otherwise, if a personal charge on the devisee. In the first case it would be for life only. (*Jackson* v. *Martin*, 18 *John. Rep.* 31.) In either case, the personal property would not be exonerated ; be- cause the will creates no fund. (*Lupton* v. *Lupton*, 2 *John. Ch. Cas.* 614, 623, *and the cases there cited.*) In the last case the Chancellor says, " When the real estate is charged, and not in the most explicit and direct terms, it is usually done in terms that indicate a pretty clear intention that the legacies were, at all events, to be paid. Thus, where the testator devises the real estate, *after payment of* debts and legacies, as in *Tompkins* v. *Tompkins*, (*Prec. in Chan.* 397,) and in *Shallcross* v. *Finder*, (3 *Ves.* 738,) or where he devi- ses the real estate, after a direction that debts and legacies be first paid, as in *Holt* v. *Vernon*, (*Prec. in Ch.* 430,) and in *Williams* v. *Chitty*, (3 *Ves.* 545,) the real estate has been held to be discharged. It is not sufficient that debts

or legacies are directed to be paid. That alone does not create the charge ; but they must be directed to be first or *previously* paid, or the devise declared to be *after* they are paid " He gives it as the result of all the cases, that a bequest of several legacies by a testator, and then devising the *residue* of his real and personal property to one, *after payment of debts and legacies,* does not create an exclusive charge on the real estate. Courts of Equity will never marshal assets in favor of a legatee, unless there be a trust in the executors for that purpose expressly in respect to the real estate. (*Keeling* v. *Brown,* 5 *Ves.* 359.)

But, admitting a trust in this case, clearly the remedy is not at law, but only in equity. (*Gorton* v. *Dyson,* 1 *Neil Gow,* 78. *Webb* v. *Jiggs,* 4 *M. & S.* 113.) The importance of confining the remedy to a Court of Equity, in all cases of a general legacy, was ably vindicated in *Deeks et ux.* v. *Strutt,* (5 *T. R.* 690.)

It may be said that *Kelsey* has paid a part of this claim ; but he was one of the executors ; and it will be intended that he paid in that capacity. If not so, a payment in ignorance of his rights should not conclude him.

*C. H. Ruggles,* contra. It is well settled that assumpsit lies against a devisee of land, upon his express promise to pay a legacy chargeable on the land, or on the devisee in respect to the land. (*Livingston* v. *The Exrs. of Livingston,* 3 *John. Rep.* 189. *Beecker* v. *Beecker,* 7 *id.* 99. *Van Orden* v. *Van Orden,* 10 *id.* 30.)

1. The legacy to *Deyo's* wife was intended by the testator to be paid by the defendant, in consideration of the devise made to him of the whole real estate ; and he became chargeable with it by entering on the lands devised. The testator directs that his debts be paid out of his personal estate, but does not direct the payment of his legacies out of that fund. He bequeaths to his wife all his personal estate, after payment of his debts, except what was bequeathed to his daughter *Sarah.* The rights and privileges bequeathed to his wife are to continue undisturbed during the term of her natural life ; and thus the personal fund is locked up till

her death; and yet one half the legacies are payable within two years after the testator's death. He farther declares, that after the decease of his wife, what remains of his personal estate shall be equally divided among all his children; thus disposing of the whole, and leaving nothing in the hands of his executors by which legacies could be paid: Upon the bequest of the personal property to the wife, there are several restrictions—the previous payment of debts; the limitation of interest to her natural life; and the exception in favour of *Sarah*—but the payment of legacies is not mentioned or provided for; though the first payment would, in all probability, fall due during her life. He directs this legacy to be paid by the defendant, individually, and his heirs—not by the executors, or by the defendant as one of them; and the direction to pay the legacy follows immediately upon the devise of the real estate. It is connected with it, not only in the same clause, but in the same sentence. The devise to the defendant excepts such rights and privileges as have theretofore or shall thereafter be granted by the testator. This language is broad enough to embrace the legacies. The executors had no interest in the personal property, except for the payment of debts.

But it is said the testator understood himself; that when he meant the real estate should be charged, he said so; that, therefore, nothing is left for implication; and the provision for the money due to the heirs of the testator's father is appealed to in proof of this. This was the last disposing clause in the will. It related to a debt doubtful as to its ever being demanded, its amount, and the time when it would become due; and having already provided as to his debts in general, that they should be paid out of his personal estate, it required an express order to make the exception. This demand might lie dormant till after the wife's death; and it was very proper to guard against the implication that it was payable out of the personal property for this reason. That was not the case with the legacy in question, and no such distinction was necessary.

True; it is a general rule of law, that legacies are payable first out of the personal estate, and that a general charge of

real estate does not exempt the personal. (*Toll. L. E.* 410). But, we answer, the personal estate was never charged for the payment of these legacies ; and a distinguishing characteristick of the cases cited to this point on the other side is, that in all of them the legacies were *left*, or *ordered* to be paid by the executors, or by trustees. No case is cited of a devise directing the devisee to pay, or making the legacy depend either expressly or by construction upon the accep‑ tance of the devise, where the real estate was holden ex‑ empt, or postponed to the personalty. In the case so much relied on, of *Ancaster* v. *Mayer*, (1 *Br. Ch. Cas.* 462 & 3) a term was raised to two executors to pay debts and legacies ; the personal estate was given to him who should take the freehold ; and the executors were ordered to pay debts and legacies by such methods, ways and means, as they should be advised, &c.

It then becomes a question, what is the mode of express‑ ion to give the personal estate exempt from the payment of debts, (or legacies) when the rule of law is, that such estate is first liable. "Therefore, if there be a *declaration plain*, or *manifestation clear*, so that it is apparent on the face of the whole will that there is such a plain intention, *the rule then is not to disappoint but to carry such intention into effect*." (*id.*) In *Watson* v. *Brickwood*, (9 *Ves.* 454) it was held " now too late to say that it is not open to the Court to collect from the whole will an intention to exonerate the personal estate, *though that intention is not expressed in any positive or conclusive words.*" In *Webb* v. *Jones*, (2 *Br. Cas. in Ch.* 60) it is said, " the general rule is very clear, that the per‑ sonal estate is the fund first liable, and that the testator can‑ not exonerate it without first substituting another fund. *But there is no magick in words.* No peculiar form of expression is necessary, in order to exonerate the personal estate. *If the intention of the testator be evident to exonerate the per‑ sonal estate, it must be exonerated.*" (*Livingston* v. *Newkirk*, 3 *John. Ch. Rep.* 312. *Lupton* v. *Lupton*, 2 *id.* 614, *S. P.*)

It is said, that where the personal estate is not expressly exempted, the testator's intention must be manifested by a specifick bequest of the personal property, in order to ex‑

UTICA,
Aug. 1824.

Kelsey
v.
Deyo.

empt it. For this, *Ld. Inchiquin* v. *French*, (*Ambl.* 33. 37,) is cited. This case is not law. The position is found no where else, and it is in contradiction to the other cases. Where such a specifick bequest exists, it is, to be sure, a very satisfactory ground of exception ; but not the only ground. But take the rule as laid down in *Ambler*. What is meant by a specifick devise of personal property? Any thing which indicates the testator's intent to give away the whole of it, without subjecting it to the payment of legacies. (*Wainright* v. *Bendlowes*, 2 *Vern.* 718.) In this case, I. *Bendlowes* devised his fee farm rents to be sold for the payment of his debts, and the surplus to his brothers, *John* and *Philip*, and his brother-in-law, *Wainright ;* and willed that his household goods should go along with his house ; and then bequeathed the rest and residue of his personal estate to his sister, *Wainright*, and made her his executrix ; and the personal property was retained by his sister, although executrix, and exempted from the payment of debts. This was held a specifick bequest of all the personal property except the household goods. The bequest under consideration is specifick, within the rules of law, according to the case cited, and other authorities. (2 *Fonbl.* 294, B. 3, *ch.* 2, *s.* 5. *id.* 285, B. 3, *ch.* 2, s. 1, *note* (*a*). *Adams* v. *Meyricle*, 1 *Eq. Cas. Ab.* 271, *case* 13.) Then *Kelsey's* personal property being specifically bequeathed, the intention to exempt it is clearly manifest, within the rule laid down on the other side.

2. Part payment of the legacy is conclusive evidence of a promise to pay the whole. (*Van Orden* v. *Van Orden*, 10 *John.* 30.)

3. But if the real and personal assets should be marshalled, part payment is evidence of the exhaustion of the latter, and binds *Kelsey*, whether there be personal estate or not. In *Pelletreau* v. *Rathbone*, (18 *John.* 31) there was no promise, no part payment, nor any other thing equivalent to a promise.

*Sudam*, in reply. Both Courts of law and Equity profess to follow the intention of the testator in the construction of wills. If this question were now raised for the first time, or

rested on inference and conjecture, the other side might be right. But there are certain settled rules to which the Court will adhere, because the authorities are a safer guide than individual opinion, and better answer another object of the law, which is certainty. Now it is perfectly well settled, that the personalty is never exempt, unless expressly declared so by the will, or by something which is plainly equivalent to an express declaration. This was settled as long ago as Ld. *Thurlow's* time. If so settled, the Court cannot get by this doctrine here. The giving real estate and legacies generally, and making a single legacy a charge upon the real estate at the close of the will, render the authorities directly applicable. It is said that one half the legacies were to be paid within one year after the testator's death—possibly before the widow's decease—and an implied charge upon the real estate is deduced from this circumstance. But no matter when the general legacies are payable. They will not take preference of the specifick bequest of the personal property. They must wait till there is enough of the personal estate to satisfy them, and if this is never the case, they must fail ; for they are considered as a debt created and charged upon the personalty. This brings us back to the terms of the will, and an examination of the cases. I refer particularly to those cited by the Chancellor, in *Lupton v. Lupton*, (2 *John. Ch. Rep.* 623). The charge must precede the devise, in order to subject the real estate. This is the conclusion to which he comes, from all the cases. Could a legatee have pursued this real property, in the hands of a *bona fide* purchaser ? Was this legacy an incumbrance which attached and adhered to the land ? I think no lawyer would go to that extent. Yet if the argument on the other side be right, here is a lien upon this land, which Equity would follow, and enforce, in whose hands soever it might come. *Caveat emptor* must be applied to a purchaser. After satisfaction of the specifick legacy to *Sarah*, the bequest over is general to the wife. This is improperly called a specifick legacy. It is not of specifick things, though it may have sometimes been so considered, when another fund has been created for the payment of debts, and widows are

oncerned. The whole doctrine of English Equity is ᵢnst its being so considered in this case.

ᵥer SAVAGE, Ch. J.   Two questions are presented to th rt, for their decision :

1. Wᵔether an action at law lies for a legacy charged upon land ?

2. Whether, from the whole will, it was clearly the intention of the testator to discharge his personal estate from the payment of the legacy in question, and charge it upon the realty ?

The first question was not directly raised on the argument, though we were referred to several English cases, which question the plaintiff's right to a remedy at law. It has been settled, that without a promise to pay a legacy charged upon the realty, an action does not lie ; and, that it will lie for any general legacy, even when there has been a promise, the English authorities are not uniform.   The first case appearing in our own reports, is *Beecker* v. *Beecker*, (7 *John. Rep.* 99.)   That was an action for an annuity charged on land devised to the defendant, in which there was an express promise to pay.   *Kent*, Ch. J. reviewed the English cases, and decided in favour of the legatee, on the authority of *Atkins* v. *Hill*, (*Cowp.* 284) *Hawkes* v. *Saunders*, (*id.* 289) and *Doe* v. *Guy*, (3 *East*, 120) and distinguished the case from that of *Deeks* v. *Strutt*, (5 *T. R.* 690.)   The next case is *Van Orden* v. *Van Orden*, (10 *John.* 30.)   In this case there was no express promise to pay, but the defendants had paid part, the estate left by the testator being sufficient to pay all the debts and legacies.   The case was admitted not to be within that of *Beecker* v. *Beecker*, but it was precisely within the case of *Deeks* v. *Strutt*.   The Court considered the payments made by the defendants to the plaintiff as conclusive evidence of an express promise to pay, so as to entitle the plaintiff to recover.   The case of *Deeks* v. *Strutt* is, therefore, overruled, and with it all the corresponding class of cases.

In the present case there was no direct evidence of an express promise to pay, but payments have been made from time to time, from which, according to the case last quoted, an

express promise may be inferred. The plaintiffs in the Court below were, therefore, entitled to recover, unless, from an examination of the will, it appears that the legacy in question was to have been paid out of the personal estate. The rule for marshalling assets towards the payment of debts is correctly laid down by Chancellor *Kent*, in *Livingston* v. *Newkirk*, (3 *John. Ch. Rep.* 312.) He there says, "It is too well settled to be questioned, that the personal estate is to be first applied to the payment of debts and legacies, and that a mere charge on the land will not exonerate the personal estate, nor any thing short of express words, or a *plain intent in the will of the testator.*"

In *Ancaster* v. *Mayer*, (1 *Br. Ch. Cas.* 462) Lord *Thurlow* says, "Where there is a *declaration plain*, that shall stand in lieu of *express words.*" Again : "If there be a declaration plain, or manifestation clear, so that it is apparent upon the face of the will that there is such a plain intention, the rule then is, not to disappoint, but to carry such intent into execution." What, then, was the intention of the testator ?

1. He first directs his debts to be paid out of his personal estate.

2. He gives his wife, *Lucretia*, all his personal estate, after payment of his debts, and a legacy to one of his daughters, and goes on to make other provision for his wife upon his homestead farm.

3. After his wife's death, what remains of the personal property is to be divided equally among his children.

4. The following clause : "I also will, devise and bequeath, to my son, *Nathaniel Kelsey*, all my real estate, to him and his heirs forever, excepting such rights and privileges as have heretofore or shall hereafter be granted by me respecting the premises : and my will and desire is, and I do hereby order and direct, that my son, *Nathaniel Kelsey*, or his heirs, pay the following legacies :" Then follow the legacies, of £100 each, to his three daughters, one of whom, (*Julia*) was a plaintiff in this cause below. He adds, "One half of each of the above legacies to be paid within two years after

my decease, and the other half to be paid in two years after the decease of my wife, without interest." He next directs a certain sum, if to be paid at all, after the death of *Daniel Kelsey*, to be paid out of the real estate ; and makes his wife executrix, and *Nathaniel Kelsey* and his son-in-law, *Moses Woolsey*, his executors. Did the testator intend that these legacies should be paid from his personal estate ? or was it his intention that *Nathaniel Kelsey* should pay to each of his sisters £100, as their right in the farm which was devised to him ? It is to be observed, that the personal estate was all given to the widow during her life. She might have lived 20 years ; and yet one half the legacies was to be paid in two years after the testator's death. Out of what fund ? The personal property ? That was in the hands of the widow. What other fund had *Nathaniel*? The farm. Again : by whom were these legacies to be paid ? By the executors ? No : by *Nathaniel Kelsey*—not *as executor*. If the legacies were to be paid out of the personalty, we must suppose that the testator, in his last moments, was mocking his wife with the appearance of making provision for her, by giving her all his personal property, when, in fact, he intended to give her none of it. It has been well remarked by Lord *Thurlow*, I think, that such a construction should be given to wills as will make the testator's intentions *honest*. Would it be honest for a husband thus to deceive his wife ? Again : one legacy is given to the wife of one of the executors. Why is the legacy to be paid by *N. Kelsey ?* If the legacy were good, and to be paid out of the personal estate, the husband of *Abigail Woolsey* might retain the money in his own hands, as executor, to pay his wife's legacy. The only part of the will calculated to create any doubt is the last clause ; and even that may admit of a construction, that all the payments by *Nathaniel Kelsey* are to be made out of the real estate. But admitting it to apply to the sum contingently spoken of, it is not sufficient, in my judgment, to change the whole complexion of the will.

I am, therefore, of opinion, that the legacy to the plaintiff, *Julia*, was a charge on the real estate devised to the plaintiff in error ; and that, by paying part, he gave conclusive evi-

dence of a promise to pay the whole; and, consequently, that the judgment of the Common Pleas should be affirmed.

Judgment affirmed.