<hr />

## WHEELER *vs.* LESTER.

*In the matter of the Estate of* GURDON WHEELER, *deceased.*

IF a legatee upon condition accept the legacy, and enter into possession, he must perform the condition, however burdensome. He is not bound to make his election whether or not to take the bequest, until the condition and value of the gift can be reasonably ascertained. A mere design or intention to accept will not conclude him, or prevent a retraction, if he was ignorant of the real state of the legacy, and the extent of the charges upon it.

The opinion in this case (*p.* 213) previously given, reviewed, and held that

though a legatee on condition to pay certain charges refuse to accept the legacy, the executor may be considered as a trustee holding the fund for the benefit of those interested in the legatory charges.

G. C. GODDARD, *for Claimant.*
DAVID GRAHAM, *for Executor.*

THE SURROGATE. This case lately came before me upon the question, whether the death of Jeremiah H. Wheeler before the expiration of the two years limited for the payment of $1500 to him, caused a lapse of his interest in that bequest.

The executor has now put in a further answer, rejecting the legacy burthened with this condition, insisting that he has never accepted it, and that the fund bequeathed is insufficient to meet all the charges upon it. In passing upon the nice and delicate questions thus presented, it is indispensable to remember that Mr. Lester, in regard to the bequest of this partnership interest, sustains a threefold character; that of surviving partner of his testator in the firm whose property is given to him; that of executor; and that of legatee upon condition. To move intelligently through this maze, it is necessary to keep before the mind the rights, duties, and relations springing from this triplex position. For example, as surviving partner he had the control of the property of the firm, his possession and disposition of which are *prima facie* to be referred to his title and capacity as surviving partner, and not as an executor. Again, as executor, he had the management of the interest of the deceased in the surplus of the partnership estate, after having, as surviving partner, wound up the business of the firm, and ascertained the extent of the interest of each member; and his dealings with such interest are primarily to be referred to his office as executor. And lastly, as legatee, he had a right to accept or refuse the legacy, and his acts in this particular are to be viewed in relation to his character as legatee. It may be difficult,

practically, to preserve these distinctions accurately, but they should not be lost out of sight in attempting a satisfactory determination of the case. (*Baker* vs. *Hall*, 12 *Vesey*, 501.) I have no doubt at all, that in a pure case of condition, and a clear, unequivocal acceptance of a legacy evinced by entering into possession, the legatee must perform the condition however burdensome. (*Digest*, 31, 4, 5, 6 ; *Talbot* vs. *The Earl of Radnor*, 3 *M. & K.*, 252.) In *Messenger* vs. *Andrews*, 4 *Russ.*, 478, a legatee upon condition to satisfy debts, took possession of the property, renewed the lease in his own name, sold the stock and carried on the trade. The point was whether he was liable to pay the debts, however much they might exceed the worth of the gift. In holding him responsible, the Lord Chancellor said "he would be entitled to a reasonable time, and opportunity to judge of the value of the property, and the burden of the condition," and "if it should turn out upon inquiry, that the debts were five times more in amount than the value of the property, that would be a circumstance to be taken into consideration, as evidence that it was not the legatee's intention to accept the legacy burdened by so onerous a condition, and the master would allow due weight to it, as a circumstance of evidence in the inquiry." It is old doctrine, that although the assent of an executor to a legacy may be by implication, as well as expression (*Wentworth's Off. Ex.*, 224), yet an executor shall never be made to assent by implication where it is found that he hath not assets, but in such case there ought to be express assent, by reason of the great prejudice which otherwise might come unto him. (*Southward* vs. *Milward*, 8 *Viner*, 176.) And it seems that even where an executor has given his assent, but it has not been completed by possession, it may be retracted on its appearing that there will be a deficiency of assets. (*Roper on Leg.*, 855 ; *Chamberlaine* vs. *Chamberlaine*, 1 *Ch. Cas.*, 256.) So also when a legatee is thrown upon his election, he is not bound to make it, until the state, condition, and value of the funds are

clearly ascertained, "for until so known and ascertained, it is impossible for the party to make a discriminating and deliberate choice, such as ought to bind him in reason and justice. If, therefore, he should make a choice in ignorance of the real state of the funds, or under a misconception of the extent of the claims on the fund elected by him, it will not be conclusive on him." (*Story's Eq.*, § 1098.) In the present instance, the executor denies that as legatee he has accepted the legacy, and also insists that the property bequeathed is insufficient to meet the charges upon it. To what extent this inadequacy exists does not appear, though the allegation is probably well founded, or otherwise he would be interested in taking the bequest. It is such a case, therefore, as should call for very strong evidence of acceptance, in fact, in order to bind the party. (*Mason* vs. *Farnell*, 12 *Mees & W.*, 674.) In most if not all of the cases where an election has been held to have been made, the party has either performed *all* the conditions annexed to the gift, or has in fact entered into the possession and enjoyment of the thing given. Here *all* the conditions have not been performed, nor has the legatee taken possession of the legacy, the property bequeathed being partnership assets, and Mr. Lester's dealing with it being attributable to his character as surviving partner. The matter then is narrowed down to the question of inferring acceptance from the naked fact of the payments to Martha Niles. It is not unimportant to observe, that one of these payments was designed by the testator to provide for *a suit of mourning at his decease*, and the other was to meet interest, on an annuity; so that both of them would ordinarily be made before the partnership affairs could be adjusted, or the condition of the estate ascertained. The acts of the legatee, therefore, in the early performance of these conditions, may naturally be considered as influenced by these circumstances, rather than by any accurate knowledge of the condition of the estate, or by a deliberate intention to take the gift; for though at that period he might be sup-

posed to have some idea of the value of the partnership interest, he still could hardly be apprised of the extent of the testator's individual debts, which were also made a charge upon that fund. While then Mr. Lester made these payments as legatee, and it may be inferred from them that he *intended* to · accept the fund, still as they were unaccompanied by any other acts showing that he had assumed the possession of the property, treating it as his own (*The Earl of Northumberland* vs. *The Marquis of Granby*, 1 *Eden*, 489), and as they were only in part performance in respect to strangers or third persons, and not in privity with the claimant here, so that strictly up to this moment he has never entitled himself as legatee to the enjoyment of the bequest, I do not think it unreasonable to regard them as indications of an intention only to accept, and not as constituting such a complete and perfect acceptance (*Walsh* vs. *Studdart*, 4 *Dru & Warren*, 172), that he could not subsequently change his mind or retract, but must be held, notwithstanding he has, on more accurate information of the value of the property found it insufficient, to a liability in regard to the debts and charges beyond the worth of the gift. This brings me to determine the effect of a rejection of the gift, upon the parties interested in the conditions. On the previous argument of the case, I intimated the opinion, that if Lester declined to accept the legacy, the bequests grafted upon it would fall. Regarding these bequests as strict conditions to be performed by the primary legatee, perhaps that would be the rule at law. But in reviewing that portion of my former opinion, candor obliges me to acknowledge that the rule in question is inapplicable to the present case; for, the more I look at the testator's entire will, the more I am led to regard the parts of it which relate to his copartnership interests bequeathed to Mr. Lester, as designed to dispose of that fund in favor of certain objects of his bounty, and not as a mere gift upon a naked condition. He in the first place directs his debts and funeral expenses to be paid "out of" this pro-

perty ; and " after the payment" of his funeral expenses and debts, he then gives the partnership interests to Lester upon certain " conditions and regulations," specifying the payments to Martha Niles, and to his brother.    I lay great stress upon the word " regulations," as indicative, in prescribing the payments subsequently mentioned, of an intention to have them paid out of the fund, thus regulated as to its management.    And although Mr. Lester could not derive any personal advantage under this provision, unless he performed the conditions, yet, on the other hand, the fund thus given under certain " regulations" may well be considered as clothed with a trust, which he could not defeat, by refusing to accept it as legatee.    " In the interpretation of the language of wills, Courts of Equity have gone great lengths, by creating implied or constructive trusts from mere recommendatory and precatory words of the testator.    Thus, if a testator should by his will desire his executor to give to a particular person a certain sum of money, it would be construed to be a legacy, although the will should leave it to the executor's own free will, how, when, and in what manner it should be paid.    So if a testator should desire his wife, at or before her death, to give certain personal estate among such of his relations as she should think most deserving, and approve of, it would be held to be a legacy among such relations." (*Story's Eq.*, § 1068, *and cases there cited ;* also § 1061, *a.*)    In *Morley* vs. *Bird*, 3 *Vesey*, 628, the testator gave all his money in the stocks, mortgages, debts, &c., to B, " upon condition" that he paid to the four daughters of C, " £400 out of £700, now lying in the three per cent. consolidated," and the £400 was held to be a specific legacy. (*Baker* vs. *Dodge*, 2 *Pick.*, 620; 4 *Mass. R.*, 684; *Birdsall* vs. *Hewlett*, 1 *Paige*, 32 ; *Cook* vs. *Grant*, *Ibid.*, 407; *Spofford* vs. *Manning*, 6 *Paige*, 383 ; *M'Lachlan* vs. *M'Lachlan*, 9 *Paige*, 534; *Harris* vs. *Fly*, 7 *Paige*, 421.)    In *Wigg* vs. *Wigg*, 1 *Atk.*, 382, the testator devised real estate *upon condition* that the devisee paid to the testator's six grandchildren £90 in equal

shares. The devisee died before the testator, and the devise lapsed, but Lord Hardwicke decided that the charge nevertheless subsisted. In *Oke* vs. *Heath*, 1 *Vesey, sen.*, 135, the same Judge held, that where the testatrix had given £4000 to her nephew, he paying out of it an annuity to his mother for life, the death of the nephew before the testatrix did not destroy the legatory interest bequeathed to the mother. These latter cases show that where by death the first legatee or devisee is prevented from taking, a charge upon such intended bequest or devise does not fail. The same principle applies with greater force to an instance of refusal on the part of the first legatee to accept a bequest, because clothed with burdensome conditions ; nor does there seem any difficulty in considering him in his character of executor as a trustee for the benefit of those interested in the charges. (*Ram on Assets*, 8 *Law Lib.*, *p.* 70, 105.)

It often happens in another well known class of cases, that a recusant devisee by electing not to take under a will, disappoints other devisees, and in such instances Courts of Equity have long been in the habit of treating the refused devise not as extinguished, but as in trust in the devisee for the benefit of the disappointed claimants, " or as it has been well expressed, they will assume jurisdiction to sequester the benefit intended for the refractory donee, in order to secure compensation to those whom his election disappoints." (*Story's Eq.*, § 1083 ; *Roper on Leg.*, 1666.)

Upon the whole, then, I am inclined to sustain the directions of the testator in relation to the payments ordered to be made by Mr. Lester, to the extent of the fund in question, notwithstanding his refusal to accept the legacy ; regarding these "regulations" as in effect creating legatory charges upon the property, which the primary legatee cannot defeat by refusing to perform the conditions, and which the executor as trustee is bound to see satisfied, so far as the particular estate upon which they are charged will enable him to do. He will therefore have to account in full

as executor, when the state of the fund can be ascertained, and proper directions given relative to the order of payment. The accounting ought to be final, and all parties in interest be cited.