PERRY *v.* HALE.

A testator devised his farm to his wife during widowhood, and after her death to his son, on condition he should pay certain sums to his sisters; and directed that his executors carry on the farm till his son was of age. The widow died, and a sister brought a bill in equity for her legacy, the son being still a minor; alleging that he had accepted the devise, and gone into possession;—*Held*, that

The son is not liable at law unless he accepts the devise;

But in equity the estate is to be charged, whether the devise takes effect or not;

The legacy becomes payable when the estate vests in the son by the decease of the widow;

The possession of the executors is to be regarded as merely in trust for the devisees.

Whether a guardian can bind his ward by an assent to a devise, burdened by a condition, *quære?*

IN EQUITY. The facts appearing upon the bill and answers were briefly as follows:

Joseph W. Hale, of Conway, died February 21, 1857, having made his will, afterward duly proved in the court of probate, whereby he "devised to his wife, Susan E. Hale, his homestead farm, in C., bounded, &c., and fifty acres of wood land, bounded, &c., containing one hundred and twenty acres, more or less, and his household furniture, so long as she should remain his widow, and at the death of his wife to his son, Edgar Hale, a minor, &c., for his sole use and benefit for ever, on condition that he should pay to his daughters, Susan E. Hale, $700, and Mary Ann Hale, $800."

The will further provided, that "his executors shall manage and carry on his homestead farm in a prudent and husbandlike manner, and at all times keep on said farm a good and sufficient stock of cattle, horses and sheep, until his son Edgar becomes of age, and then he and his mother have the management."

Susan E. Hale, the widow, Lorenzo T. Hale, one of the defendants, and Samuel B. Shackford, were appointed executors. The widow accepted the trust, and was allowed as executrix. The other executors declined.

The widow, Susan E. Hale, died February 26, 1858; and on the first Tuesday of May, 1858, the defendant, Lorenzo T. Hale, was appointed administrator, with the will annexed, and subsequently sold the personal estate and some real estate, not devised, paid three other legacies, and on the first Tuesday of July, 1862, settled his account of his administration. He never had, as administrator, any occupancy, or possession, or income, of the homestead farm, and nothing touching the income of the farm was included in the settlement.

On the first Tuesday of April, 1858, George S. Perry was appointed guardian of Edgar Hale, then a minor, and who will not be of age till May 3, 1870, took upon himself the trust, and so continued till the first Tuesday of January, 1861, when he resigned. During his guardianship said Perry lived on and had the income of said homestead farm; and on settlement of his account of his guardianship, and for the use of said farm, he claimed due him between $80 and $90, after deducting the whole income of said farm.

At a court of probate on the first Tuesday of July, 1861, the defendant, Lorenzo T. Hale, was appointed trustee of said homestead farm, and took upon him that trust, and as such entered on said homestead farm, and has since managed the same; and on the first Tuesday of July, 1862, he settled his account of said trust, leaving a balance in his hands of $147.

The bill alleges that by reason of said devise and the death of the widow, said Edgar became seized in fee of said homestead farm, and entitled to immediate possession thereof, on the condition of paying said legacies, and on the 26th of February, 1858, by himself and his guardian, accepted the devise, and entered and took possession of it, and ever since, by himself or his guardian, or by said Lorenzo T. Hale, has held possession of it, claiming title by said devise, and taking the profits and income, and said Edgar became liable to pay said Susan E. Hale, now wife of said George S. Perry, the said legacy of $700, yet though requested, &c., particularly on the 5th of November, 1858, said Edgar, his guardian, and said Lorenzo have neglected, &c.

The bill prays that said Edgar may be decreed to pay the legacy, or that the guardian, or said Lorenzo, may be decreed to pay it out of the farm, and for other relief.

By their answers the defendants insist that the testator did not intend that said Edgar should enter upon said farm in his own right, till he arrived at the age of twenty-one, and that it will be optional with him, when he arrives at that age, to accept or refuse the devise; and they deny that they, or either of them, have intermeddled with, or taken possession of said farm, or received any income or benefit from it.

*Chase*, and *W. H. Y. Hackett*, for the plaintiff.

*J. Dearborn*, for the defendant.

BELL, C. J.   Where ·a legacy is charged on land, an action of assumpsit, or debt, will lie against the devisee to recover it in certain cases.   *Piper* v. *Bennett,* 2 N. H. 439.   To the maintenance of such action it is necessary that the devisee should have accepted the devise, of which the most usual and satisfactory evidence is his entry upon it, — his possession and occupation of the devised property.   *Beecker* v. *Beecker,* 7 Johns. 99;   *Van Orden* v. *Van Orden,*. 10 Johns. 30;   *Pickering* v. *Pickering,* 6 N. H. 120;   *Pickering* v. *Pickering,* 15 N. H. 290;   *Kelsey* v. *Western,* 2 Comst. 501;   *Birdsall* v. *Hewlett,* 1 Paige 32;   *Glen* v. *Fisher,* 6 Johns. Ch. 34.

A devisee is presumed to assent to a devise which is apparently beneficial, unless he expressly renounces it; but he may waive, or disclaim the estate, and the devise will then be inoperative as to him.   *Stebbins* v. *Lathrop,* 4 Pick. 33;   Touch. 319;   *Birdsall* v. *Hewlett,* 1 Paige 32.   This presumption of assent is never conclusive; neither are acts that indicate a design or intention to accept.   *Wheeler* v. *Lester,* 1 Bradf. 293.   If the property devised is subject to a condition, or burdened with a charge, the devisee or legatee is allowed a reasonable time and opportunity to judge of the value of the bequest and of the burden of the condition, before he decides to accept or reject it.   *Ibid.*   But by entering into possession of the property, the devisee accepts the gift with the condition;   *Pickering* v. *Pickering,* 6 N. H. 120;   and evidence that a third person was in possession, to whom the devisee gave directions as to his remaining and quitting the possession, is sufficient evidence of entry and possession.   *Tole* v. *Hardy,* 6 Cow. 340.

If a legacy is charged on land the land will be subject to the charge, not only in the hands of the devisee, but in those of an assignee.   *Veazey* v. *Whitehouse,* 10 N. H. 409;   *Leavitt* v. *Wooster,* 14 N. H. 550;   *Pickering* v. *Pickering,* 15 N. H. 290;   *Copp* v. *Hersey,* 31 N. H. 317;   *Harris* v. *Fly,* 7 Paige 421;   *Nellows* v. *Truax,* 6 Ohio N. S. 97.

On every transfer of the whole estate, the grantee, who takes the estate charged with a duty which may arise upon a contingency, or with a continuing duty, which constitutes no debt, or a duty which arises from time to time, may be held by an implied promise to perform the duty or pay the charge which accrues in his time; and perhaps be charged in an action at law.   But the remedy against several assignees of different parts of. the estate is by bill in equity. *Pickering* v. *Pickering,* 15 N. H. 290.

In regard to legacies charged on land, courts of equity· exercise an extensive, and in some cases an exclusive jurisdiction.   1 Story Eq. 602.

In equity and at law the personal estate of a testator is held the primary fund for the payment of legacies;   *Harris* v. *Fly,* 7 Paige 427;   *Hoes* v. *Van Hoesen,* 1 Barb. Ch. 379;   Roper on Leg. 163;   *Leavitt* v. *Wooster,* 14 N. H. 565, and cases cited; and it is not relieved from liability in the first instance, where the legacy is made a charge on real estate, unless such is indicated in the will as the intention of the testator.   *Hanna's Appeal,* 31 Penn. St. 53;   *Glen* v. *Fisher,*. 6 Johns. Ch. 34 ;   Adams Eq. 263, n. 1;   *Patterson* v. *Scott,*

2 D., M. & G. 531; *Collins* v. *Robbins*, 1 D., M. & G. 131; *Buckley* v. *Buckley*, 11 Barb. 77; *Leavitt* v. *Wooster*, 14 N. H. 550.

The intention of a testator to first charge the realty with the payment of legacies must be express or clearly implied, not only as an intention to charge realty, but to exonerate personalty. *Whitehead* v. *Gibbon*, 2 Stockt. 230; *Kelsey* v. *Western*, 2 Comst. 506; *Dodge* v. *Manning*, 1 Comst. 298; *Livingston* v. *Newkish*, 3 Johns. Ch. 325; *Tole* v. *Hardy*, 6 Cow. 333. The old law is said to have been that the personal estate could not be exempted from the payment of debts and legacies without express words; but it is held sufficient if there appears upon the will a plain intention, or necessary implication. *Hoes* v. *Van Hosen*, 1 Comst. 120. And it is said it is not material that the charge is imposed on the devisee in the terms of a condition, as where real estate is devised to A., he paying the debts, or legacies, or the like. *Ibid. Bridgeman* v. *Dove*, 3 Atk. 202; 2 Vern. 120; 9 Ves. 444; Roper on Leg. 163. But this would seem to be one of the circumstances, to be weighed with others in the will, as indicating the intention of the testator. An absolute and specific disposition of all the personal estate of the testator, not a mere residuary bequest, is sufficient to manifest the intent of the testator to charge the realty in exoneration of the personalty. *Kelley* v. *Deys*, 3 Cow. 133. From the principle that the personal estate is the fund first liable to the payment of legacies, it results that where the personal estate is not intended to be exonerated, the receipt by the executor of personal assets, sufficient to pay the legacies, discharges the real estate from further liability for the payment of them; and where such assets are wasted or misapplied by the executor, the loss falls upon the legatee; and he can not resort to the real estate, upon which the legacy is charged, either in the hands of the devisee, or of any purchaser from him. *Sims* v. *Sims*, 2 Stockt. 168; *Glen* v. *Fisher*, 6 Johns. Ch. 34; *Birdsall* v. *Hewlett*, 1 Paige 32; Willard Eq. Jur. 488.

And it has been held that the purchaser may insist that the legatee shall first exhaust his remedy against the devisee personally, as well as against the personal estate of the testator, where that is the primary fund; *Glen* v. *Fisher*, 6 Johns. Ch. 34; *Dodge* v. *Manning*, 1 Comst. 298; though the equity of that rule is not evident.

The rule as to the equitable charge upon the estate devised is the same, where the devise fails wholly at law, or is not capable of being enforced at law, as if the estate is devised to the heir at law, or to a stranger, upon condition that he pay the legacy. In the first case the devise to the heir is void at law, yet in equity it is good as an equitable charge upon the land of the heir, who is directed to pay it; *Smith* v. *Atherley*, 3 Rep. in Ch. 93; Freem. Ch. 36, S. C.; and in the next case, if the stranger renounces the estate upon which the devise as to him becomes inoperative, yet the equitable charge remains, so, though a stranger can not enter upon the land on breach of the condition, the court will consider the heir at law a trustee for the legatee, for the purpose of charging the land with the payment of the legacy. *Harris* v. *Fly*, 7 Paige 427.

Though a legatee may elect, or may be compelled to resort to

the personal estate, as the fund first liable to the payment of a legacy, yet the legatees of the personal estate, thus applied, will in equity be entitled to stand in the place of the legatees whose legacies were charged on the land, as against the land itself. Adams Eq. 263, n. 1; *Patterson* v. *Scott,* 2 D., M. & G. 531; *Lockwood* v. *Stockholm,* 11 Paige 87; *Crider's Appeal,* 11 Penn. St. 72.

Some decisions in this State seem in conflict with the principles before stated, that the legatee whose legacy is charged on land can not charge the land, if there is sufficient personal assets. In *Leavitt* v. *Wooster,* 14 N. H. 566, *Gilchrist,* J., says, " In the case of *Gookin* v. *True,* 3 N. H. 288, an action was brought on a probate bond to recover certain legacies charged on land, where the devisees of the land had entered upon it. It was held that the legacies could not be considered a charge upon the estate generally, which the executor was bound to pay; that their non-payment was not a breach of the bond, and that the action could not be maintained." It is also to be inferred from the case of *Veazey* v. *Whitehouse,* 10 N. H. 410, that where the charge is upon the land the executor is not liable upon his bond. An action of assumpsit was brought in that case against the assignee of the land charged with the support of the testator's daughter, and maintained; and such was the case also in *Pickering* v. *Pickering,* 6 N. H. 120. The first of these cases, however, is reconcilable with the principle before stated. The testator devised to his executor so much of his personal estate as should be sufficient to pay his debts and incidental charges, and if any remained it should be the property of A. D. He gave his real estate to his son, and directed that he pay S. B. and H. D. fifty dollars each, and the action was brought on the probate bond to recover these legacies. The case falls within the rule before stated, that an absolute and specific disposition of all the personal estate shows an intent to charge the real and exonerate the personal property. In the second case no question was made upon the points, and the facts necessary to raise the question are not stated. The third case was against an assignee of the real estate, and it was not suggested that there were personal assets, or that the assignor was responsible.

If the court adopt the rule that the personal estate is the fund first chargeable for the payment of legacies, as there is nothing stated in the bill as to the personal except the household furniture, it may be necessary to amend the bill, so as to show that there was not sufficient personal estate to pay the legacies, or that it was specifically bequeathed to others. It is not necessary perhaps now to decide this point.

The answers in this case present two points, which are relied on as matter of defense: First, that the defendant, the devisee, had never accepted the devise, nor been in possession of the devised estate: The other, that it was the intention of the testator to give his son till he should be twenty-one years of age to determine whether he would accept the estate.

The minority of the devisee precludes his personally doing any valid act to bind himself to his prejudice, and it is not pretended that he has done any thing to affect his right. The estate remained

in the hands of his mother during her life, and after her death the plaintiff, George S. Perry, as guardian of the devisee, entered into possession of the estate, and continued to occupy it till his resignation, in January, 1861, since which time it has been in possession of a trustee appointed by the court of probate under the will, to fill the place of the executors. It can not be supposed that this trustee has any such relation to the devisee as would make the possession of the trustee an acceptance of the devise to bind the devisee. We have found no decision that a guardian of a minor has authority to accept or reject a devise made to his ward, so as to bind his estate. Ordinarily, a guardian has no right to purchase real estate for his ward, or to sell it, unless under the license of the court of probate; and we think that the plaintiff, being himself the guardian, can not avail himself of his own act as an assent to a devise, which might be most prejudicial to his ward, where his own interest and that of his ward were opposed.

If this were an action at common law the point of acceptance would be vital, since upon it the right of action depends; but in this proceeding in equity nothing depends upon that, except the question whether the devisee shall be charged personally, since the bill has for its object to charge the land as well as the person of the devisee; and a decree may be made to charge the land itself by a sale, though no person appears to be personally chargeable.

As to the other point, the intention to allow the devisee till twenty-one to make his election to accept the devise, it is of no importance as to the charge upon the land, except as it bears upon the question of the time when these legacies are to be paid. The land is liable to the payment in any event. If, by the fair construction of the will, these legacies were payable when this action was commenced, the legatees must have a right to commence proper proceedings to enforce payment of them, whether the devisee had made his election or not; the true nature of the devise being that the testator gave to the legatees so much out of the real estate, and the balance to the devisee. But if the legacies, from the terms, or fair construction of the will, were payable only after the devisee should arrive at twenty-one, the bill is prematurely brought. The question is one affecting the interest as well as the right of action, since a legacy draws interest from the time it is payable.

The general rule is that legacies for which no other time of payment is fixed, are payable in one year from the decease of the testator. There seems no color to contend that these legacies were so payable, inasmuch as the real estate is given to the widow during her widowhood, and after her death, or marriage, to the devisee on condition that he pay these legacies.

This is one of the cases where the course of events has not fallen out agreeably to the expectation of the devisor. He probably supposed that his wife would live much beyond the full age of her son, as was the reasonable probability; and as is shown by the provision that after the son should arrive at twenty-one, he and his mother should have the management of the property. In that event the legacies might be payable when the estate should vest in possession

of the son by the death of his mother, which might be an early or
a very distant day; or when the devisee should arrive at twenty-
one. It would seem unreasonable to impose on the son the payment
of these legacies, when he should arrive at twenty-one, when the
whole of the property was given to the widow for a term which the
testator expected to continue after that time, and which might con-
tinue for so long a time that the payments and the interest might
far exceed the value of the property. The natural construction
would seem to be, that the son should become liable to pay the leg-
acies, when he should come into possession of the property by the
expiration of his mother's interest; as until that time he would
have no means derived from the will to pay the legacies. If this is
the just inference as to the testator's intention in the events which
he anticipated, it seems equally just as the contingencies have
occurred. By the death of the widow the son became entitled to
the benefit of the property, and the means to pay the burdens upon
it, and no reason is seen why his sisters should not at the same
time become entitled to their shares of it; that is, to their legacies,
unless it may be found in the provision that the executors should
manage and carry on the farm till the son, Edgar, became of age;
but we think it can not have that effect. The executors were to
carry on the farm during the life of the widow, as well as after, and
nothing in the will indicates that they were so to carry it on for the
benefit of themselves, or any other person than the widow while
her estate continued, and then of her son. They must, therefore,
be deemed trustees for her, and after her death equally trustees for
Edgar, and their possession for all substantial purposes, must be his
possession, since they must be accountable to him for the income.

There must be a decree in favor of the plaintiffs, charging the
land, the form of which, unless the parties agree, will be directed
by the court.