Personnel Commission
No. 7086

LEONA I. FOOTE

v.

STATE PERSONNEL COMMISSION

March 31, 1976

*Upton, Sanders & Smith (Mr. J. Gilbert Upton* orally), for the plaintiff.

*Warren B. Rudman,* attorney general, and *Charles G. Cleaveland,* assistant attorney general *(Mr. Cleaveland* orally), for the defendant.

LAMPRON, J.    Appeal under RSA ch. 541 from a decision of the personnel commission (RSA 98:15 (Supp. 1975)) upholding the discharge of plaintiff for insubordination on April 18, 1974, by the superintendent of the New Hampshire Home For The Elderly at Glencliff. By a unanimous decision the personnel commission denied plaintiff's appeal on October 15, 1974, thereby sustaining her discharge. Plaintiff then filed a request that the commission make findings of fact and a motion for a rehearing. Both were denied whereupon plaintiff entered this appeal based mainly on the following grounds: (1) lack of evidence of insubordination, and (2) error by the commission in failing to make any findings of fact to support its decision.

Plaintiff's discharge by superintendent Rich arose out of the following incidents. On April 3, 1974, Rich mailed a letter to the plaintiff telling her that she should have accepted another job which she had turned down "when you know that your services to this health care facility are simply not acceptable." On April 5, 1974, Rich mailed another letter to plaintiff suggesting that she "request a transfer to the position now open in your dietary service that will not require the exercise of 'authority' which you state you do not know where [it] 'starts or stops'". This letter arrived at her home on Saturday, April 6. Since she was not there at the time, the letter was received by her son Charles who is 26 years old. Because the previous letter had deeply upset his mother, Charles took it upon himself to return the April 5th letter unopened to the superintendent. Plaintiff was unaware of her son's action and had given him no authority in the matter. Charles delivered the letter to Rich personally at his residence. Rich requested that Charles take the letter back which he refused to do. Rich was upset by the incident and reported the matter to the State police. This April 5th letter and the failure of the plaintiff to take action thereon became the basis of her termination.

Plaintiff was off duty the following Saturday, April 6 and Sunday, April 7 and returned to work Tuesday, April 9. She testified that she consulted her immediate supervisor Leland Libbey and

asked him if he had heard of the letter and what she should do and that Libbey told her he had no knowledge of it and that Rich was a very hard man to talk to. Libbey testified that he did not recall this conversation. Plaintiff testified that she did not confront Rich immediately concerning the letter because she was afraid of him due to his manner of speaking to people. During the days which followed plaintiff saw Rich several times within her department but he did not speak to her. She would have gone to his office if he had asked her to. On April 10 plaintiff was asked to see Dr. Brewster, resident physician, concerning a health care checkup. Being a psychiatrist, Dr. Brewster conducted a mental status examination and recommended that plaintiff be terminated.

On April 11, 1974, plaintiff was called into Rich's office for a conference attended by Leland Libbey. The entire meeting was tape-recorded. Rich asked plaintiff a series of questions by which he discovered that she had no knowledge of the contents of his April 5th letter and that she did not authorize or direct her son to return it to him. After this interview Rich decided to fire the plaintiff and wrote her a letter of termination dated April 18, 1974. The letter recited Rich's obligations as superintendent and his authority to choose his mode of communicating with employees. Reference was then made to Rule VIII, Section 3 of the rules of the department of personnel which provide for immediate discharge without warning for willful insubordination. The letter continued as follows: "Your failure to retrieve the letter in question [April 5], to acknowledge it as a bonafide communication between supervisor and employee, your failure to make some contact regarding this unfortunate incident, your failure to report to me, or to Mr. Libbey, your immediate supervisor, that the letter to you had been misdirected and you needed to know what it said, and your failure to take any corrective action is, in my professional judgment, willful insubordination . . . Mrs. Foote, you are hereby dismissed from State service as of this moment."

"In all employment contracts . . . the employer's interest in running his business as he sees fit must be balanced against the interest of the employee in maintaining his employment, and the public's interest in maintaining a proper balance between the two." *Monge v. Beebe Rubber Co.,* 114 N.H. 130, 133, 316 A.2d 549, 551 (1974). In the public sector the State Employees Personnel System (RSA ch. 98) is the agency designated to effectuate the above purposes. An important part of the checks and balances provided in the personnel system is the right to appeal an administrative decision

to the personnel commission and the latter's actions to this court. RSA 98:15 (Supp. 1975).

The defendant's brief properly points out that the transcript of a hearing is singularly inefficient at conveying information upon which an independent evaluation of plaintiff's conduct and state of mind can be made. Rule VIII, § 3B Rules of State Personnel Commission (1974) does not define what constitutes the offense of willful insubordination. In decisions of courts which have defined it, its common essence is a willful refusal to accede to a legitimate and reasonable demand of the employer. *Nelson v. Los Angeles County,* 362 U.S. 1, 7 (1960); *State Tenure Comm'n v. Madison County Bd. of Ed.,* 282 Ala. 658, 213 So. 2d 823, 834 (1968); *School District No. 8, Pinal County v. Superior Court,* 102 Ariz. 478, 480, 433 P.2d 28, 30 (1967) (en banc); *New Orleans F. F. Ass'n Local 632 v. City of New Orleans,* 260 So. 2d 779, 786 (La. Ct. App. 1972), *aff'd,* 263 La. 649, 269 So. 2d 194, *cert. denied,* 411 U.S. 933 (1973).

Absent basic findings, we cannot determine on what part of the contradictory testimony the personnel commission ruled her conduct constituted willful insubordination. The commission's ultimate and only order in this case was that the employee's discharge was proper. "Appeal denied" does not provide that answer.

In order to properly perform its functions under RSA ch. 541 this reviewing court needs findings of basic facts by the personnel commission so as to ascertain whether the conclusions reached by it were proper. *Society for the Protection of N.H. Forests v. Site Evaluation Comm.,* 115 N.H. 163, 337 A.2d 778 (1975); *Trustees of Lexington Realty Trust v. City of Concord,* 115 N.H. 131, 336 A.2d 591 (1975). In cases where the facts are not in dispute or the principles involved are very simple there may be no need of such findings. It is not the intent of this court to overburden the commission with a requirement to make findings when they are not essential to insure a proper review.

However, in this case there was a history of discord between the plaintiff and the superintendent. The latter assigned at the appeal hearing as reasons for dismissing the plaintiff the fact that she did not follow prescribed diets for certain patients, her lack of leadership, and his fear that it could cause a food-poisoning incident. In later testimony the superintendent based plaintiff's discharge solely on the incident about the unopened and returned letter of April 5, 1974. Accordingly the matter must be remanded to the personnel commission for findings setting forth the facts on which it

concluded that the plaintiff's conduct constitutes willful insubordination in sufficient detail so that we can determine the validity of its conclusion.

*Remanded.*

Grimes, J., did not sit; the others concurred.