Hillsborough
No. 7611

### GERMAINE BOUCHER, EXECUTRIX OF THE ESTATE OF EUGENIE COURCHESNE

### v.

### PAULINE JOHNSON

April 29, 1977

*McLane, Graf, Greene, Raulerson & Middleton* and *R. David De-Puy,* of Manchester (*Mr. DePuy* orally) for the plaintiff.

*Gerard O. Bergevin,* of Manchester, by brief and orally, for the defendant.

PER CURIAM.  Germaine Boucher, as executrix of the estate of her mother, Eugenie Courchesne, seeks to recover the proceeds of a joint savings account maintained in the name of her mother and the defendant daughter Pauline Johnson. The action is based on the plaintiff's claim that the estate is entitled to the proceeds by virtue of a waiver by the defendant of her interest in the joint account. Trial was by jury (*Mullavey,* J., presiding). At the close of the evidence the defendant seasonably objected and took exception to the court's failure to grant the defendant's motion for a directed verdict. After verdict for the plaintiff the defendant excepted to the court's denial of the motion to set aside the verdict. All questions of law raised were reserved and transferred by the court.

The decedent was survived by six daughters, including the plaintiff and defendant herein. Her estate consisted principally of her home which was devised to the defendant and another daughter Simone Boisvert, both of whom had lived in the house with their mother prior to her death. No mention of the $12,417.18 in the joint account was made in the will.

Mrs. Courchesne died following a period of illness, during which time the defendant had served as her mother's conservatrix.

Shortly before the death, defendant herself had fallen ill and had undergone hospitalization and major surgery.

The crucial events in this case occurred the day following the mother's funeral, when the parties gathered for a reading of the will in the offices of defendant's attorney. After the will had been read, the defendant and her attorney engaged in a discussion relative to the joint bank account. The evidence, viewed in the light most favorable to the plaintiff, shows that during this discussion the defendant indicated that she did not want to keep the bankbook as she felt the proceeds should be used to pay the debts of the estate and then be divided so as to provide equal legacies to the children. Defendant was clearly informed by her attorney that the money was hers if she so desired, but she reiterated her position and entrusted the bankbook to her attorney.

During the evening hours of the same day defendant received a telephone call from the plaintiff proposing that the defendant couple her relinquishment of the bank account with a surrender of her rights in the house. This suggestion irritated the defendant, and after a discussion with her husband she decided that she wanted to keep the proceeds of the joint account. The following morning she returned to her attorney's office and repossessed the bankbook.

We must determine whether the jury verdict awarding the proceeds of the account to the estate should be allowed to stand.

RSA 384:28 provides:

> Whenever any account shall be maintained in any bank doing business in this state in the names of two persons payable to either of such persons, and payable to the survivor of them, the said account shall upon the death of either of said persons become the property of and be paid in accordance with its terms to the survivor . . . .

The statute "establishes property rights in the survivor authorizing the payment of the balance to him without a showing of a donative intent on the part of the party furnishing the funds, or delivery of the pass book or access thereto." *In re Wszolek Estate*, 112 N.H. 310, 314, 295 A.2d 444, 446 (1972); *see* Kepner, *Five More Years of the Joint Bank Account Muddle*, 26 U. Chi. L. Rev. 376, 388–89 (1959).

Notwithstanding the aid which the statute thus gives to the property rights of the survivor, it "does not operate . . . to make

the surviving tenant the owner of the account against his consent . . . . The surviving tenant's statutory right to the account is not one which he is compelled to accept." *Bradley v. State,* 100 N.H. 232, 236–37, 123 A.2d 148, 151 (1956). The surviving tenant is in a position analogous to that of a devisee or legatee, and has the right to prevent the passage of title by renunciation. *Id.* at 236, 123 A.2d at 151; *see Perry v. Hale,* 44 N.H. 363, 365 (1862).

■■■■ The jury was properly instructed by the court that, in order for the plaintiff to recover, the defendant must have made an express, clear and unequivocal renunciation of her rights to this joint bank account. The court correctly charged that the renunciation must be made with the full knowledge of the effects, legal and practical, of the act or the statement made, and that it must be intelligently done, fully aware of all the surrounding circumstances. Annot., *What Constitutes or Establishes Beneficiary's Acceptance or Renunciation of Devise or Bequest,* 93 A.L.R.2d 8, 54 (1964); *see Perry v. Hale,* 44 N.H. at 365. We conclude that the evidence was sufficient to support the finding by the jury that an effective renunciation was made in the instant case.

*Exceptions overruled.*

BOIS and GRIMES, JJ., dissented.

BOIS, J., with whom GRIMES, J., joins, dissenting:

I would hold that the defendant effectively withdrew her renunciation and that her motion for a directed verdict should have been granted.

The majority opinion declines to consider the issue of withdrawal on the ground it was not effectively raised below. The record indicates however that in her motion for a directed verdict the defendant argued she never "effectively released control of the joint bank account," and the plaintiff requested an instruction (which was denied) on the irrevocability of a renunciation. In my opinion the issue was fully and fairly raised and should have been acted upon by the trial court. In any event it is clearly before us now.

It is undisputed that the defendant was in a strained emotional and physical state; her mother had died only shortly before, and she, herself, was recently released from the hospital. Her renunciation was informally delivered to her attorney, her attempted withdrawal expeditiously made, and there was no evidence or in-

dication of detrimental reliance by adverse parties. Fairness requires that withdrawal be permitted under these circumstances. *Parenteau v. Gaillardetz*, 103 N.H. 92, 166 A.2d 112 (1960), relied on by the plaintiff, is not authority to the contrary. In that case the surviving tenant never renounced her interest in the passbook, so the issue of withdrawal was not presented.

In a line of New York cases it has been held that withdrawal of the renunciation of testamentary bequests should be permitted where the adversary parties have not changed their position on the retraction and the withdrawal does not adversely affect the legal or equitable rights of any beneficiary. *In re Angel's Will*, 33 Misc. 2d 122, 225 N.Y.S.2d 419 (Surr. Ct. 1962); *In re Johnston's Will*, 164 Misc. 469, 298 N.Y.S. 957 (Surr. Ct. 1937); *see* 6 Page, Law of Wills § 49.11 (W. Bowe & D. Parker rev. 1962). This would seem to be the better rule in that there should be sufficient flexibility in the law to allow for the fact that "[r]enunciations are often made without due consideration of the consequences and are likely to be influenced by emotional circumstances surrounding the testator's death. Moreover, strict enforcement . . . is hardly calculated to execute the purpose of the testator, who normally intends that the testamentary beneficiary shall receive his property." 47 Yale L.J. 487, 489 (1938).

The result reached today is an unduly harsh one to a defendant who I believe is entitled to prevail as a matter of law.