Rockingham
No. 7637

ALFREDO BASTIANELLI & a.

v.

TOCO INTERNATIONAL, INC. & a.

June 27, 1977

*Shaines, Madrigan & McEachern,* of Portsmouth, and *Gregory D. Robbins,* of Portsmouth (*Mr. Robbins* orally), for the plaintiffs.

*Shute, Engel & Frasier,* of Exeter, and *Lynn D. Morse,* of Exeter (*Mrs. Morse* orally), for the defendants.

GRIMES, J.   The issue before us is whether the trial court erred in finding that defendant David Altschuler was an innocent purchaser for value of real property from the grantee of a conveyance held to be in fraud of creditors of Toco International, Inc., the grantor.

Plaintiff, a creditor of Toco International, Inc., filed a bill in equity seeking to set aside, as a fraud on creditors, a conveyance

from Toco to James Shane, trustee of Jasha Realty Trust, of certain real estate on the ground that the conveyance left Toco insolvent and was therefore fraudulent under the Uniform Fraudulent Conveyance Act, RSA ch. 545.

David Altschuler, a mortgagee from James Shane, trustee, was allowed to intervene as were others claiming to be creditors of Toco. After hearing before a Master (*Leonard C. Hardwick*, Esq.) the court found the conveyance to Shane, trustee, to be in fraud of creditors under RSA ch. 545. The court also found that the conveyance should be set aside except for the subsequent transaction with Altschuler who was found to be a bona fide purchaser for value without actual or constructive knowledge of any fraud on creditors. Plaintiffs' exceptions were transferred by *Perkins*, J.

Toco, which owned substantial real estate holdings in Londonderry, New Hampshire, upon which it had constructed some twenty-five apartment buildings, was owned by Michael Shane and his brother, James. In May 1972, Jasha Realty Trust was created by a written declaration of trust for the purpose of holding legal title to trust properties. James Shane was named trustee and his brother Michael, beneficiary. The trustee was to have no duties except to hold legal title and to act in accordance with directions from the beneficiary.

In June 1972, Toco conveyed the developed part of its property to James Shane, trustee of Jasha, for a stated consideration of $500,000 and the assumption of all mortgages. By several deeds all dated April 9, 1973, Toco conveyed the undeveloped property to James Shane, trustee of Jasha Trust. Although this property was subject to mortgages which were recorded, the mortgages were not mentioned. The consideration was stated to be $1 and below the description in each deed appeared the notation "Consideration less than $100." No revenue stamps appeared on the recorded deeds.

Some time prior to April 9, 1973, Michael Shane approached Arthur Altschuler relative to a loan to be secured by a mortgage on both the developed and undeveloped parts of the property. Arthur and his brother David are beneficiaries of the Wayne Investment Trust which was established to hold title to and make investments in real estate. Neither Arthur nor David knew anything about Shane, Jasha or Toco or their financial situations.

The developed portion of the property was subject to prior mortgages of about $3,080,300 and the back lots in the amount of about

$201,348. A loan of $600,000 was made secured by a mortgage in the amount of $360,000 on the developed part and $240,000 on the undeveloped part but the mortgages in effect made each property security for both amounts. These mortgages were dated April 9, 1973, and were recorded on April 10. Some of the loan was used to pay off prior mortgages. On default on the part of Jasha, Altschuler foreclosed on May 20, 1974, and took title to the properties. He has disposed of some of the property and has lost other parts by foreclosure of prior mortgages but still holds parts of both the developed and undeveloped property. Plaintiff Bastianelli obtained a judgment in Rockingham County Superior Court against Toco in the amount of $4,160 plus interest and costs on October 17, 1973, suit having been begun on May 9, 1973.

Plaintiffs contend first that the deed of trust creating Jasha established a dry or passive trust which became executed under the statute of uses and cite *Bellows v. Page*, 88 N.H. 283, 188 A. 12 (1936); *Fredette v. Foley*, 98 N.H. 509, 104 A.2d 197 (1954), and *Wilkins v. Miltimore*, 95 N.H. 17, 56 A.2d 535 (1948). They argue that Altschuler cannot be a bona fide purchaser because he had notice of the dry trust and that the trustee had no authority to convey to him. This ground was not urged in the trial court and no question is therefore presented for review here. *Barton v. Manchester*, 110 N.H. 494, 272 A.2d 612 (1970).

Plaintiffs here are not beneficiaries but are only creditors of the grantor. The mere existence of the declaration of trust is not alone constructive notice of any fraud with regard to creditors. Michael Shane, the beneficiary of the trust, raises no question regarding the authority of the trustee in the transaction with Altschuler and plaintiffs are in no position to do so.

Plaintiffs' second argument is that Altschuler cannot be a bona fide purchaser because he was chargeable with notice of sufficient facts to place upon him the duty to inquire as to the validity of the conveyance from Toco to Jasha. Plaintiffs claim that such inquiry would have revealed the fraudulent nature of that conveyance. They argue that Altschuler was charged with knowledge that the principals of Toco and Jasha were the same individuals and that notice of the fact that the property in each deed was conveyed for less than $100 was sufficient to create a duty to inquire and to charge him with all that such an inquiry would have revealed.

The trial court rejected these arguments and found that Altschuler had no actual knowledge of the financial condition of either Toco or Jasha, or whether there were any unpaid creditors of either and had no knowledge of any possible title defects. The court also found that there was nothing in the registry of deeds which should have alerted him.

■ Altschuler obtained title insurance and it is claimed that the lawyers who did the title search for Altschuler had been involved with Toco and knew a great deal about the close relationship between Toco and Jasha. The close relationship however does not make the transaction fraudulent and in any event we decline to rule that Altschuler is charged with any knowledge possessed by these attorneys.

■■ It is argued that the gross inadequacy of the consideration for the undeveloped portion was sufficient to bring home to Altschuler that the conveyance was fraudulent. The trial court expressly made "no finding of actual intent to defraud" but made the determination under the statute. There is no question but that Altschuler gave valuable and adequate consideration. Also the record does not compel a finding that Altschuler should have known the consideration was inadequate. The developed portion of the property which was part of the security for the mortgage to Altschuler was mortgaged for in excess of $3,000,000 and $500,000 was paid by Jasha to Toco for this property. The undeveloped portion was conveyed by several deeds each reciting that the consideration was less than $100. However, these lots were subject to mortgages totaling $240,000. Under all these circumstances, it cannot be said as a matter of law that Altschuler had such knowledge at the time regarding inadequacy of consideration as to require further inquiry. Moreover, because of the court's determination that the conveyance from Toco to Jasha was subject to be set aside, except as to Altschuler, only because of the statute and not for any actual fraud, any inquiry by Altschuler would have required an investigation into the assets and liabilities of Toco to determine whether the conveyance made it insolvent. This is an obligation we decline to impose on mortgagees such as Altschuler. *See Osgood v. Insurance Co.*, 93 N.H. 160, 37 A.2d 12 (1944).

We therefore hold that the findings and rulings of the trial court were supported by the record.

*Exceptions overruled.*

All concurred.