Merrimack
No. 7682

SUSAN SCARBOROUGH

v.

ROBERT B. ARNOLD

October 24, 1977

*McSwiney, Jones & Semple,* of Concord (*Mr. Robert E. Bowers, Jr.,* orally), for the plaintiff.

*David H. Souter,* attorney general, and *James C. Sargent, Jr.,* assistant attorney general (*Mr. Sargent* orally), for the state.

*Frederic T. Greenhalge,* of Concord, by brief and orally, for the defendant.

PER CURIAM. This is an appeal pursuant to RSA 354-A:10 from a finding by the New Hampshire Commission for Human Rights. The Superior Court (*Keller,* C.J.) approved the Master's (*Robert A. Carignan,* Esq.) report. A ruling on a motion for clarification on the issue of damages was approved and defendant's exceptions were reserved and transferred by *Flynn,* J.

The defendant, Robert Arnold, owns, manages and operates a restaurant in Concord, New Hampshire. The plaintiff, Susan Scarborough, was one of fifteen to twenty persons who applied to Mr. Arnold for an advertised position of "management trainee." The ad stated that the applicant must "work well with others," but no other criteria were specified.

The record shows that the plaintiff's husband telephoned the restaurant to make an interview appointment for his wife, but was informed by an unnamed employee that the defendant was not considering women for the management position. The plaintiff herself called the next day and testified that she received the same negative response from an unnamed employee until she stated that she thought such a policy constituted sex discrimination. She was then granted an interview with the defendant. On the basis of the defendant's conduct, attitude, and statements made during the course of the interview, the plaintiff concluded that the defendant would not consider her equally with male applicants. *See King v. N.H. Dept. of Resources,* 562 F.2d 80 (1st Cir. 1977). On March 17, 1975, she filed a complaint with the United States Equal Employment Opportunity Commission. The federal agency "deferred" the matter to the State Commission for Human Rights for investigation. *See* 42 U.S.C.A. 2000c-5. On March 29, 1975, the defendant hired a male applicant who had previously worked as a short order cook in another restaurant. The plaintiff apparently lacked com-

parable work experience, which the defendant claims was a qualification of the position.

After investigation and hearing, the commission found the defendant to be in violation of RSA 354-A:8 I (Supp. 1975), making it an unlawful discriminatory practice for an employer "because of the . . . sex . . . of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification." It awarded plaintiff $2,500 in damages. On appeal to the superior court, the master affirmed the finding of unlawful discrimination, but recommended a remand on the issue of damages "[s]ince no evidence of damages was adduced at the hearing and there was no evidence of damages in the record . . . ."

█ The defendant contests the sufficiency of the plaintiff's evidence and certain procedural matters. We find that the commission's findings of basic facts are insufficient to enable us to assess the validity of the commission's conclusion that there has been a violation of RSA 354-A:8 I (Supp. 1975), and accordingly the matter must be remanded for clarification.

RSA 354-A:9 II requires the commission upon finding "any unlawful discriminatory practice," to state its findings of fact. The complete findings and the commission's ultimate conclusion in the instant case were as follows:

1. Complainant Susan Scarborough, having answered an advertisement for a Management Trainee published by the Respondent, R.T.P. Enterprises, Inc., (Weeks Ice Cream, Inc.) in the Concord Monitor 3/7/75, was interviewed 3/10/75 by Mr. Robert B. Arnold, President R.T.P. Enterprises, Inc., and was actively dissuaded from applying for the position of Management Trainee;

2. Mr. Arnold under examination testified he had suggested to the Complainant she "would be happier" and "make more money" as a waitress;

3. Mr. Arnold in testimony stated he had not made similar recommendations to male applicants for the position of Management Trainee;

4. In testimony Mr. Arnold stated that in his considerable experience and background as manager and/or owner

of like and similar businesses (Friendly Ice Cream, Weeks Ice Cream) that, although there had been female applicants for Management Trainee positions, he had never hired a female for said position;

5. Therefore, in light of the Respondent's testimony, the Commission finds R.T.P. Enterprises, Inc., (Weeks Ice Cream, Inc.), and its President Robert B. Arnold, in violation of NHRS 354-A: 8, I.

Although the commission determines that there has been a violation of RSA 354-A: 8 I (Supp. 1975), it does not specify the nature of the unlawful discriminatory practice involved. Two theories exist under section 8 I which support the commission's conclusion: discriminatory refusal to hire, and wrongful failure to fairly consider an applicant because of sex. The commission's findings of basic fact, however, are too incomplete to enable us to determine which of these theories was utilized, or if it was correctly applied. "A reviewing court needs findings of basic facts to understand administrative decisions and to ascertain whether the facts and issues considered sustain the ultimate result reached." *Society for Protection of N.H. Forests v. Site Evaluation Comm.*, 115 N.H. 163, 173, 337 A.2d 778, 786 (1975); *accord, Foote v. State Personnel Comm'n,* 116 N.H. 145, 148, 355 A.2d 412, 414 (1976); *see* K. Davis, Administrative Law Text § 16.04 (3d ed. 1972).

In considering what constitutes proof of discriminatory failure to hire under our "Law Against Discrimination," RSA 354-A, *as amended* (Supp. 1975), it is helpful to look to the experience of the federal courts in construing the similar provisions of Title VII of the 1964 Civil Rights Act. *See* RSA 354-A:3 (4). In the leading case of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04 (1973), the Supreme Court set forth "the order and allocation of proof in a private, nonclass action challenging employment discrimination" under Title VII:

The complainant . . . must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination. This may be done by showing (i) that he belongs to a . . . minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position

remained open and the employer continued to seek appli-
cants from persons of complainant's qualifications . . . .

The burden then must shift to the employer to articulate
some legitimate, nondiscriminatory reason for the em-
ployee's rejection . . . .

[Finally, the employee must] be afforded a fair oppor-
tunity to show that [the employer's] stated reason for
[the] rejection was in fact pretext.

In the instant case the commission wholly ignored the matter of
job qualifications. Plaintiff's evidence tended to show, if only in-
ferentially, that the applicant would be "trained" and thus that
substantial grill experience was not a qualification for the position;
defendant's evidence was that prior grill experience was of consid-
erable importance. The commission's findings do not resolve this
evidentiary conflict. Furthermore, even if grill experience were not
a stated qualification of the job, the lack of such experience in an
applicant established a legitimate, nondiscriminatory reason for
the preference of an applicant having such experience. Thus, de-
fendant's evidence would have satisfied his burden "to articulate
some legitimate reason for the rejection." The question then be-
comes whether the stated reason is bona fide or merely a pretext.
The commission's findings fail to make this necessary determina-
tion.

■ Even where a case of discriminatory failure to hire is not
made out, where a job applicant qualifies for at least initial consid-
eration, a failure to fairly consider an application because of sex
amounts to prohibited conduct under RSA 354-A:8 I (Supp. 1975).
"While the ultimate prize was won by the male who had superior
qualifications, this in our view does not purge [the employer] of its
prior discriminatory act of refusing to consider her at all not *solely*
because of lack of qualification but because she was a woman."
*Gillin v. Federal Paper Board Co.,* 479 F.2d 97, 102 (2d Cir.
1973); *see King v. New Hampshire Dept. of Resources,* 420 F.
Supp. 1317, 1326 (D.N.H. 1976), *aff'd,* 562 F.2d 80 (1st Cir. 1977);
RSA 354-A:3(4). The commission's findings of basic fact indicate
that the defendant held discriminatory attitudes toward women
applicants, but the commission failed to ascertain whether the
defendant indulged his prejudices in this case or whether he gave
the plaintiff fair consideration despite his feelings. Without such a
determination, we cannot assess whether the commission in fact

utilized a refusal to fairly consider theory or, if it did so, whether this theory was correctly applied under the facts of this case.

Finally, the commission neglects to enlighten us as to the basis of its $2,500 damage award. Although the commission does not label this amount as back pay, the award's substantial size indicates that such may be its origin. An award of back pay would be appropriate if the commission had properly found for the plaintiff on the basis of a discriminatory failure to hire, but would not necessarily be correct under a failure to consider theory.

■ It is true that administrative findings of fact are deemed to be prima facie lawful and reasonable, and that an agency's conclusions are entitled to great weight and cannot be lightly set aside. *Desmarais v. State Personnel Comm'n*, 117 N.H. 582, 378 A.2d 1361 (1977). It is also true that the opportunity to obtain employment without discrimination because of sex has been recognized and declared to be a civil right, RSA 354-A:2 (Supp. 1975), and that we are directed by statute to construe the provisions of RSA ch. 354-A liberally in order that its remedial purposes may be accomplished. RSA 354-A:13. Neither of these principles of construction assists us in this situation, however, where the absence of basic findings of fact renders us unable to determine what the commission has decided or why it has reached its decision.

■ The remaining issues raised by the defendant may be dealt with briefly. RSA 354-A:9 II, which sets forth the procedure for handling a discrimination complaint, requires that one of the commissioners be appointed to investigate the complaint and to make a determination whether probable cause exists. The statute limits the investigating commissioner's role in the hearing to that of witness, specifying that three other commissioners will preside and make the final determination as to the existence of unlawful discrimination. The defendant asserts that the very fact that a commissioner in one case determines probable cause and in another case assesses ultimate guilt on the basis of a fellow commissioner's decision to prosecute creates an unacceptable risk of bias, so as to constitute a denial of due process. *See generally Withrow v. Larkin*, 421 U.S. 35 (1975). We cannot accept this contention. Both federal and state case law generally reject the idea that a combination of the investigative and adjudicative functions is necessarily a denial of due process. *Withrow v. Larkin supra; Bennett v. Thomson*, 116 N.H. 453, 460, 363 A.2d 187, 192 (1976), *appeal dismissed for*

*want of substantial federal question,* 429 U.S. 1082 (1977); 2 K. Davis, Administrative Law Treatise § 13.02, at 256 (3d ed. 1972). We have held in previous cases that due process may not be denied by a legislative scheme which contemplates that the same parties who initiate removal proceedings against a public official also conduct the hearing. *See Bennett v. Thomson supra; Farrelly v. Timberlane Regional School Dist.,* 114 N.H. 560, 324 A.2d 723 (1974). In the present case, though, the legislature has provided even greater procedural safeguards by wisely insulating the investigating official from the decision-making process. In the absence of any showing of actual prejudice or bias by the defendant, we cannot say that the procedures of RSA ch. 354-A represent a deprivation of due process. *Cf. Burhoe v. Whaland,* 116 N.H. 222, 356 A.2d 658 (1976).

Defendant next argues that the commission failed to follow the legislative direction in RSA 354-A:9 II that the determination of probable cause, the conciliation efforts, and the call for a public hearing be made by the commissioner appointed to investigate the charge. The defendant seems to assume that because Commissioner Bolden, who was appointed to investigate in this case, did not speak with or write to the defendant directly, the commissioner did not perform his statutory duty. The defendant points to the fact that he was not interviewed directly by the commissioner but rather by Investigator Manning of the commission staff, and that the commissioner did not directly correspond with him. The signatory of the various letters informing the defendant of the discrimination charge, the probable cause finding, the commission policy not to release investigative reports, the proposed conciliation agreement, and the commission's final order and findings of fact was Berel Firestone, the executive director of the commission. We do not find that the performance of these duties by agents of the commissioner in any way violates the legislative intent of RSA 354-A:9. Indeed, it is clear that the statute contemplates that the commissioner may so utilize the services of commission employees, for RSA 354-A:9 II expressly provides that the appointed commissioner shall investigate a complaint "with the assistance of the commission's staff," that he shall "cause to be issued and served in the name of the commission" a written notice of a hearing, and that the commission "shall issue and cause to be served" on the defendant in any action an order providing relief. *See also* RSA 354-A:7 III. Nor does the defendant's allegation that

he was prevented from freely engaging in conciliation by the participation of Mr. Firestone, who later prosecuted the plaintiff's complaint before the commission, have merit. RSA 354-A:9 II eliminates this problem by expressly providing that commission members and staff shall not disclose what occurs in the course of conciliation endeavors, and that evidence thereof shall not be received at the subsequent hearing.

We do not reach the defendant's final contention that the commission's policy of refusing to release the investigative report utilized in the determination of probable cause generally constitutes a denial of due process. The defendant has not claimed that he was in any way prejudiced by the withholding of the report, and the record demonstrates clearly that he was not. The issues involved in this case were not complex. The plaintiff's case consisted of only two witnesses—herself and her husband. At the time of the determination of probable cause, the defendant was supplied with Commissioner Bolden's findings. These findings, which closely correspond to the final findings of the commission, demonstrate that the defendant was at no time prejudiced by the introduction of any new evidence, issue, or witness.

Accordingly, the matter must be remanded to the human rights commission for findings in accordance with this opinion.

*Remanded.*

BOIS, J., dissented; GRIMES, J., concurred in the dissent; the others concurred.

BOIS, J., dissenting: I respectfully dissent. In my view, remand to the commission on theories of either failure to hire or failure to consider is unwarranted.

I would hold that the evidence did not and could not support a conclusion that the defendant refused to hire the plaintiff. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973), the Court noted that " 'Congress did not intend by Title VII . . . to guarantee a job to every person regardless of qualifications . . . . [T]he act does not command that any person be hired simply because he was formerly the subject of discrimination . . . . Discriminatory preference for any group . . . is precisely and only what Congress has proscribed.' "

The court would remand on the issue of failure to hire in order that the commission might decide whether the defendant's stated

reason for failure to hire the plaintiff was "bona fide or merely a pretext," *i.e.,* whether the defendant's testimony that he preferred someone with grill experience was a fabrication. This seems an unlikely possibility at best, for the record shows that the position demanded considerable grill expertise and ordinarily an experienced prospective employee is preferable to an inexperienced one. In any event, the commission's findings *credited* the defendant's testimony, although the commission found that testimony damning. Indeed, the commission's ultimate finding was:

> Therefore, *in light of the Respondent's testimony,* the Commission finds [the respondent] in violation of NHRS 354-A:8, I. (Emphasis added.)

Remanding to the commission on the issue of whether the defendant's testimony was a pretext is thus an invitation to the commission to take a different factual view of the case.

The matter of wrongful failure to consider has not been addressed by the parties at any stage of the litigation. Both the plaintiff and the state, which argued in behalf of plaintiff, have proceeded before this court on a theory of wrongful failure to hire. The majority admits that the commission itself was proceeding on a theory of wrongful refusal to hire as indicated by the substantial size of the award. Prudential concerns as to the proper exercise of the judicial power ordinarily require that we not address issues which the parties themselves have failed to raise. *Desmarais v. State Personnel Comm'n,* 117 N.H. 582, 378 A.2d 1361 (1977); *Bastianelli v. Toco International,* 117 N.H. 549, 552, 375 A.2d 595, 597 (1977). I would relax this rule where, due to plain error, a party has been deprived of a directed verdict to which he or she would otherwise be entitled. *Boucher v. Johnson,* 117 N.H. 343, 346–347, 373 A.2d 349, 351–52 (1977) (Bois, J., dissenting). These circumstances are not present here, and in my view we should not go beyond those matters presented for review by plaintiff's own counsel and counsel for the state. The wisdom of not addressing issues on which the court has not had the benefit of argument by counsel should be evident.

With all of plaintiff's and defendant's evidence before it, the commission limited itself to factual findings that the defendant had exhibited sexually discriminatory attitudes. I would take these findings as the limit of the commission's discovery of "wrongful" conduct. This falls short of the requirement that he in fact dis-

criminated against plaintiff. Since the findings do not support a violation of RSA 354-A:8 I, I would vacate the commission's order.

GRIMES, J.: I concur in this dissent.